RICHARD STOCK[1] *vs.* MASSACHUSETTS HOSPITAL SCHOOL
& others.[2]

Suffolk.  January 10, 1984. — June 19, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Administrative Law,* Exhaustion of remedies, Primary jurisdiction. *Practice, Civil,* Parties. *Education,* Special educational needs.

Awarding a high school diploma to a young man with special educational needs and thus terminating his eligibility for special education services without formal, written notice to his parents of the graduation decision, of their right to involvement in the decision, and of their right to a hearing and administrative review violated State and Federal statutory law. [210-212]

The parents of a young man with special educational needs were not required to resort to administrative proceedings before bringing an action on his behalf challenging a decision to graduate the young man from high school although he had not attained sufficient learning and skills to warrant the award of a high school diploma, where the issue in controversy turned on a question of law which had not been committed to agency discretion and where the record showed that resort to administrative procedures was virtually impossible. [212-213]

On appeal of an action challenging the award of a high school diploma to a young man with special educational needs and the resultant termination of his eligibility for special education benefits, this court declined to set standards for the attainment of a high school diploma. [213]

The question whether the regional school district in which the parents of a student with special educational needs reside is an indispensable party to an action challenging the award of a high school diploma to the student and the resultant termination of his eligibility for special education

---

[1] Richard Stock, a physically and mentally disabled person, brings this action through his father and next friend, Joseph Stock.

[2] The other defendants are the Department of Education (department), the Commissioner of Education, the director of the bureau of institutional schools of the division of special education of the Department of Education, the superintendent of the Massachusetts Hospital School, and the program manager of Brayton High School.

benefits was to be decided in the first instance on remand to the Department of Education for administrative proceedings, rather than by this court. [214]

CIVIL ACTION commenced in the Superior Court Department on July 23, 1982.

The case was heard by *John L. Murphy, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard F. Howard* for the plaintiff.

*Judith S. Yogman,* Assistant Attorney General, for the defendants.

NOLAN, J.  The plaintiff, Richard Stock, has appealed the entry of summary judgment in favor of the defendants in the Superior Court. We allowed Stock's motion for direct appellate review. We hold that allowance of the defendants' motion for summary judgment was error, and we remand the case to the Superior Court.

1. *Factual background and prior proceedings.* Richard Stock, age 21, suffers from multiple cognitive and motor disabilities which are the result of a brain tumor and chemotherapy-radiation treatments received for that tumor at the age of ten. He also manifests emotional and behavioral difficulties which are concomitant with his physical condition. For the most part, he is confined to a wheelchair. At times he has demonstrated academic abilities ranging from the fourth through the ninth grade level. At the time he was awarded a high school diploma, a psychologist's evaluation indicated that his abilities were consistently below the norm for his age group and were consonant with brain damage.

At the age of fourteen, Stock entered the Massachusetts Hospital School, where he received special education services at the Brayton High School.[3] In the fall of 1980, Stock's teachers

---

[3] The Massachusetts Hospital School, operated by the Department of Public Health, is an institution for disabled children. Among its programs is the Brayton High School, located at the hospital. Brayton High School

met to formulate his Individualized Educational Plan (IEP) for the 1980-81 school year.[4] The teachers intended that Stock be graduated at the end of the academic year. Neither Stock nor his parents were invited to this meeting. In the early part of the winter of 1981, Stock signed the IEP. The IEP does not show a parental signature.[5] The IEP does not mention gradua-

employees are under contract with the Department of Education. The department is the State education agency charged with implementing G. L. c. 71B, concerning children with special needs. G. L. c. 71B, § 2. There must also be compliance with 20 U.S.C. §§ 1400 et seq. (1982), the Assistance for Education of All Handicapped Children Act (EAHCA), in order to qualify the Commonwealth's special education programs for receipt of Federal funds.

[4] The IEP or Program is the backbone for development of special education services under both State and Federal law. Under G. L. c. 71B, § 3, local school committees are charged with diagnosing and evaluating all children with special needs within the school district. Provision is made in § 3 for the annual evaluation of the child's special needs by a representative of the local school department, a teacher familiar with the child, a physician, a psychologist, a nurse, social worker or guidance counselor, and other medical and educational specialists if necessary. Those evaluating the child must develop a suggested course of special education "best suited to the child's needs, [including] the specific benefits expected from such action." G. L. c. 71B, § 3, eighth par., inserted by St. 1972, c. 766, § 11.

General Laws c. 71B, § 3, mandates that such evaluations be made available to parents. Further, provision is made for hearings by the department in accordance with G. L. c. 30A. Parents may refuse the suggested plan and request a hearing before the department, through the Bureau of Special Education Appeals. Parents may consent to or reject alternative placements suggested there. If the parents reject them, the matter is then referred to the State advisory commission on special education. Parents aggrieved by the commission's decision may then "appeal" to the Superior Court.

Additionally, under 20 U.S.C. § 1414(a)(5) (1982), States must, in order to qualify for Federal educational assistance, provide assurance to Federal authorities that annual individual education programs are developed for each special needs student. The IEP is defined in 20 U.S.C. § 1401(19) (1982) to include the child's present educational performance, a statement of annual goals and objectives, the services to be provided, the dates of initiation and duration of services, and objective evaluation criteria for annual review of the achievement of educational goals.

[5] We wish to point out that although this case concerns parental involvement in the child's special education services, our decision applies with equal force to a guardian, custodian, or any person or entity responsible for a child in need of special education services.

tion. At no time were his parents provided formal, written notice of their right to challenge the IEP or of the procedural avenues open to them to make that challenge.[6] Neither were they told that graduation would terminate their son's eligibility for special education services.[7] In June, 1981, Stock was presented with a high school diploma. His eligibility for special education services was thereby terminated.

In the months following graduation, Stock remained at the hospital school. Although the record is unclear as to whether additional special education services were offered to him, or offered and refused, in the time between graduation and the commencement of this action, there is no question that Stock has received no further special education services since his graduation. He has failed to adapt either to sheltered workshop

---

[6] General Laws c. 71B, § 3, requires written notice to parents when children are referred from regular education to special education programs. As noted above, § 3 also requires that written evaluations "shall be made available" to parents, and provides for parental rejection of the individualized educational programs, and administrative hearings and appeals concerning the programs.

Although G. L. c. 71B, § 3, is not specific concerning the precise type of notice required to be given parents, the Commonwealth's federally assisted special education programs must comply with the procedural safeguards described in 20 U.S.C. § 1415 (1982) to continue to qualify for receipt of Federal funds. 20 U.S.C. § 1415(a) (1982).

Most important for this action is the requirement of § 1415(b)(1)(C) (1982) that the State educational unit provide "*written prior notice* to the parents . . . *whenever* such agency or unit — (i) proposes to initiate or change, or (ii) refuses to initiate or change, the identification, evaluation, or *educational placement* of the child or the *provision* of a free appropriate public education to the child" (emphasis added). The State must also provide to parents written notice of the administrative review procedures available to them and an opportunity for an impartial due process hearing. 20 U.S.C. § 1415(b)(1)(D) & (b)(2) (1982).

[7] General La. ، c. 71B, § 1, as amended by St. 1978, c. 552, § 18, defines "[s]chool age child" as "any person of ages three through twenty-one who has not attained a high school diploma or its equivalent." Presumably, one who ceases to be a "[s]chool age child," by reason of receipt of a high school diploma, also ceases to be a "[s]chool age child requiring special education" under G. L. c. 71B, § 1. Provision of additional services beyond graduation or the age limitation is now governed by G. L. c. 71B, §§ 12A-12C, inserted by St. 1983, c. 688.

or to independent living settings. At the time appellate briefs were filed, he was hospitalized in a chronic care unit.

In December, 1981, Stock's parents sought legal counsel. In the proceeding below, Stock challenged the award of his diploma on procedural and substantive grounds, alleging violations of both State and Federal law. The defendants asserted that Stock had failed to exhaust administrative remedies. On March 29, 1983, a judge of the Superior Court issued a memorandum and order on cross-motions for summary judgment. In his memorandum, the judge ruled that Stock could not acquire the academic skills necessary for a regular high school education before reaching age twenty-two, the age at which special education entitlements terminate. The judge then concluded that Stock had not met the "primary jurisdiction" requirement of exhaustion of administrative remedies, ordered the entry of summary judgment in favor of all defendants, and dismissed Stock's complaint.

After judgment, Stock's counsel wrote to the Bureau of Special Education Appeals urging consideration of his client's appeal. The assistant director of the Bureau of Special Education Appeals took the position that, because Stock had received a high school diploma, the bureau no longer had jurisdiction of his case.

On appeal, Stock raises the following issues: (1) whether the defendants' failure to provide notice and procedural protections before terminating special education services violated his rights under State and Federal law; (2) whether presentation of a high school diploma to Stock in the absence of his attaining sufficient skills to warrant such presentation violated his rights under State and Federal law; and (3) whether the Superior Court judge erred in his conclusion that court proceedings were inappropriate in the absence of exhaustion of administrative remedies. Stock requests a determination from this court that he had not acquired sufficient skills to graduate from high school without his express consent. He requests relief in the form of an order rescinding his diploma and directing the department to arrange for and fund appropriate special education services for him. Further, Stock urges this court to estab-

lish procedural and substantive standards for graduation of special needs students.

The defendants argue that the judgment of the Superior Court should be affirmed on the issue of exhaustion of administrative remedies, and further urge that Stock's complaint be dismissed for failure to join a necessary party under Mass. R. Civ. P. 19 (a), 365 Mass. 765 (1974), and for failure to state a claim for which relief can be granted.

For the reasons set forth below, we agree that Stock's graduation was procedurally and substantively defective and that exhaustion of administrative remedies would have been futile in his case. However, because it is inappropriate for this court to arrogate to itself the powers delegated to the department, we decline to establish substantive educational standards.

2. *Procedural safeguards.* The focus of Stock's argument is that the decision to graduate a child with special education needs is a "change in placement," 20 U.S.C. § 1415 (b) (1) (C) (i) (1982), triggering the mandatory procedural safeguards of EAHCA, described in 20 U.S.C. § 1415 (1982). The plaintiff cites no judicial discussion of this issue, nor have we found any.[8] It seems obvious, however, that graduation, because it will cause the termination of a student's participation in special education programs, can hardly be characterized as anything other than a change in placement. This view accords with Federal law, which requires that States qualifying for Federal assistance provide special needs children with "a free appropriate public education." 20 U.S.C. § 1412(1)(1982). It also accords

_____

[8] Termination of special education services by reason of a child's expulsion from school is a "change in placement" requiring the implementation of notice and hearing safeguards. *S-1* v. *Turlington,* 635 F.2d 342, 348 (5th Cir.), cert. denied, 454 U.S. 1030 (1981). *Stuart* v. *Nappi,* 443 F. Supp. 1235, 1242-1243 (D. Conn. 1978). The Federal courts have noted with great concern that, if the result were otherwise, school officials might employ expulsion proceedings to terminate special education services. This would circumvent the express purpose of EAHCA — to provide all special needs children with a free appropriate public education. *S-1* v. *Turlington,* supra at 347-348; *Stuart* v. *Nappi, supra.* The result would be all the more insidious if graduation proceedings were employed as a device to circumvent the Federal mandate by prematurely terminating special education services.

with the law of this Commonwealth, which mandates that the department administer special education programs so as "to assure the maximum possible development of a child with special needs." G. L. c. 71B, § 2, as amended by St. 1978, c. 552, § 19. No change in placement seems quite so serious nor as worthy of parental involvement and procedural protections as the termination of placement in special education programs. Under the Federal scheme, a change in placement requires formal, written notice of the decision to graduate a child, as well as notice of a parent's right to protest that decision, a description of the administrative remedies and procedures to be followed, and a description of any alternative services which may be available. 20 U.S.C. § 1415 (1982). To ensure conformity with Federal policy, the State must adhere to these notice and procedural requirements. 20 U.S.C. §§ 1412 (5)(A), 1415(a), 1416 (1982). This change requires significant parental involvement in the decision-making process, as this is contemplated by 20 U.S.C. § 1414(a)(C)(iii) (1982), and by G. L. c. 71B, § 3. It is not enough, contrary to the defendants' argument, that Stock's parents received actual notice of the graduation or that they participated to a limited extent in the transitional planning surrounding the graduation. From all appearances, the Stocks received actual notice of a fait accompli, without any notice that they might challenge the decision.[9] It is difficult to find justification for permitting a young man with Stock's handicaps to pass through and out of the special education system by virtue of his signature on an IEP — which did not even mention the graduation decision — without some evidence that he or his parents were aware of the consequences of doing so and the alternatives available to them.[10] We note that

---

[9] Children at the Brayton High School were permitted to decline graduation in 1982.

[10] This is not to suggest that children be excluded from such decisions; the regulatory scheme requires their involvement where appropriate. 603 Code Mass. Regs. § 28, par. 311.4 (1981). In many cases, involvement of the special needs child will be of great assistance in educational planning.

the conduct of which Stock complains was in direct violation of the department's special education regulations.[11]

Failure to provide to Stock's parents formal, written notice concerning the graduation decision, failure to provide such notice regarding their rights to involvement in that decision, and failure to notify them as to rights to a hearing and administrative review, violate State and Federal statutory law. As a result, we need not reach the issues raised concerning violation of the due process clause of the Fourteenth Amendment to the United States Constitution, nor claims asserted under 42 U.S.C. § 1983 (1976 & Supp. 1981).[12]

3. *Primary jurisdiction.* It is well established that resort to the administrative process is generally a prerequisite to in-

_____

[11] The department's regulations for the implementation of St. 1972, c. 766, The Comprehensive Special Education Law, which were effective on September 1, 1978, provide the following measures designed to ensure parental involvement, including several provisions for written notice. Parents are to be part of the evaluation team meeting to create an IEP. Department of Education Special Education Regulation 311.7, as appearing in 117 Mass. Reg. 1 (1978). Parents must be provided with written notice of referrals to special education evaluation, including notice of the parents' right to be present at all IEP development team meetings. *Id*. 317.0-317.11. Parents must be provided with written notice of the completed special education evaluation and IEP. *Id*. 324.0-324.6. This notice must include the option to accept or reject the IEP. *Id*. 324.4, 325.1(a). Creation of a new IEP must conform to all the requisites of an original IEP; specifically, all parental rights remain the same. *Id*. 335.4. If a parent rejects an IEP in a timely manner, the school committee must notify the Bureau of Special Education Appeals (Bureau), and the Bureau must in turn notify the parents and the school committee of their rights in the appeal process. *Id*. 400.1. When a parent fails to accept or reject an IEP, the school committee must also so notify the Bureau, and the Bureau must provide the same notice of appellate rights to the parents and school committee. *Id*. 400.2. Nothing in the record suggests compliance with these regulations. (Current regulations appear at 603 Code Mass. Regs. § 28.00 [1981].)

[12] Because statutory violations, not constitutional claims, form the premise for our decision, we will not discuss the defendants' claim that the plaintiffs have failed to state a cause of action to the extent that that argument is addressed to constitutional claims. Further, we disagree with the defendants' contention that the decision to graduate Stock is nonjusticiable. Although the court is not inclined to set new substantive standards concerning requisites for high school graduation, there is nothing improper in reviewing a specific case to determine whether present standards have been met. We conclude that the plaintiff has stated a cause of action.

voking the jurisdiction of a court. *East Chop Tennis Club* v. *Massachusetts Commission Against Discrimination,* 364 Mass. 444 (1973). However, the doctrine of primary jurisdiction[13] is limited by several exceptions. Exhaustion is not required where it would prove futile, or where only questions of law are presented to the court, or where irreparable harm would result if judicial action were delayed by the implementation of the administrative process. See *Ezratty* v. *Puerto Rico,* 648 F.2d 770, 774-775 n.5 (1st Cir. 1981) (futility); *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 75-76 (1982) (questions of law); *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 220-222 (1979) (questions of law). Here, not only were questions of law involved in construing graduation as a "change in placement," but the record reveals that invocation of the administrative procedures was virtually impossible, and thus, of course, futile.[14]

4. *Standards.* Stock urges this court to set standards for the attainment of a "high school diploma or its equivalent," the achievement of which terminates eligibility for special education services under G. L. c. 71B, §§ 1 & 3. This we cannot do. Academic standards are matters peculiarly within the expertise of the department and of local educational authorities, and are at present regulated. 603 Code Mass. Regs. § 40.00 (1979). It is sufficient that the trial judge found, and the record supports, that Stock would be incapable of attaining, by age twenty-two, sufficient learning and skills to merit the award of a high school diploma under existing standards. From this it follows inescapably that conferring a diploma upon the plaintiff at the age of eighteen was substantively inappropriate.

[13] Problems of "primary jurisdiction" or "prior resort" in administrative law concern resort to judicial action *prior to* initiation of *any* agency proceedings, whereas the doctrine of exhaustion of remedies presupposes a situation where some administrative action has begun. *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 220-222 (1979).

[14] We hasten to caution that these exceptions to the primary jurisdiction requirement in agency proceedings are to be confined to narrow circumstances, as in situations where parental reliance on school authorities is likely to be great, and parental knowledge of administrative procedure likely to be absent. Nothing herein is to be construed as permitting an evasion of the administrative process.

5. *Failure to join a necessary party.* The defendants argue that this action must be dismissed under Mass. R. Civ. P. 19 (a), for failure to join an indispensable party, the King Philip Regional School District, the local educational agency for the district where Richard Stock's parents reside. There exists some question as to which local agency will be responsible, both academically and financially, in assisting Stock.[15] In view of our decision to order the case remanded to the department the question whether a local agency will or which local agency need be joined will be best resolved by the department itself, in construing its own regulations. Additionally, the defendants' assertion of error as to failure to join a local agency is not sufficient to require dismissal of this action either under Mass. R. Civ. P. 19 (a), or Mass. R. Civ. P. 21, 365 Mass. 767 (1974).

6. *Relief to be granted.* In view of our determination that the defendants' failure to adhere to procedural safeguards rendered exhaustion of administrative remedies futile, the trial judge's entry of summary judgment in favor of the defendants must be reversed. Further, because the award of a diploma was both procedurally and substantively deficient, the diploma must be rescinded. This case is remanded to the Superior Court with directions that it order the department to take jurisdiction and to hold a hearing on the matter of providing special education services to Stock. Should it determine that further services are appropriate, the department shall take into account the period of about three years which has elapsed since the initial graduation in June, 1981. This is to be added to Stock's period of eligibility for special education services. Thus, he may receive such services beyond the normal termination age of twenty-two, see G. L. c. 71B, § 1, although the department

_____

[15] This confusion apparently stems from establishing where the plaintiff currently "resides" — with his parents or at a place of his own — in order to join the appropriate local agency under 603 Code Mass. Regs. § 28, par. 202.1 (1981). Resolution of this issue is best left for the department at the time the hearing is held. At that time the department will be able to ascertain whether Richard Stock is residing with his parents or elsewhere in the Commonwealth, and provide notice to the appropriate local agency. Cf. *Board of Educ.* v. *School Comm. of Amesbury,* 16 Mass. App. Ct. 508 (1983).

is not necessarily precluded from terminating Stock's special education services on some basis other than age. Finally, the department may consider plans for services to which Stock may be entitled under G. L. c. 71B, §§ 12A-12C, inserted by St. 1983, c. 688. The Superior Court shall retain jurisdiction of the case.

*So ordered.*