### BROOKLINE SCHOOL COMMITTEE, Plaintiff,

### v.

### Arthur GOLDEN et al., Defendants.

### Civ. A. No. 85–1636–G.

United States District Court, D. Massachusetts.

Feb. 6, 1986.

Sara Holmes Wilson, Cathleen Cavell, David Lee Turner, Brookline, Mass., for Brookline School Committee.

Anne M. Vohl, Broude & Hochberg, Boston, Mass., for Golden.

Carolyn V. Wood, Asst. Atty. Gen., Boston, Mass., for Massachusetts Dept. of Educ.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

GARRITY, District Judge.

Plaintiff filed this action seeking review of a March 1985 decision by the Massachusetts Bureau of Special Education Appeals ("the Bureau"), pursuant to the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1415(e)(2). Plaintiff challenges that part of the Bureau's decision which found that plaintiff violated the notice requirements of EAHCA by failing to send defendant parents, Marsha and Arthur Golden, prior written notification of a change in the after-school component of their handicapped child, Benjamin's education program. The case comes before the court on cross-motions for summary judgment. After reviewing the briefs and exhibits submitted by the parties, but without hearing oral argument, the court grants plaintiff's motion for summary judgment and denies defendants' motions.

Briefly, the facts are as follows: Pursuant to a 1984 Individualized Education Plan finalized by a consent order entered into by the parents and Brookline on May 21, 1984, the after-school component of Benjamin's education program consisted of two afternoons per week at the BASS program and three afternoons per week at the Driscoll program. Both programs were located at the Driscoll School and were run by parents as unstructured, extended day-care programs for non-handicapped children.

During the spring and summer of 1984, Brookline and the parents discussed the possibility that the Driscoll program would no longer be suitable for Benjamin due to his age. When the Driscoll Program re-

fused to accept Benjamin for the fall of 1984, the parents requested that Benjamin be permitted to attend the BASS program five afternoons per week. The BASS program agreed to accept Benjamin for three days per week beginning in September, 1984. For the remaining two afternoons per week, Benjamin attended an individual program at the Driscoll School. Thus, the change in Benjamin's after-school program which is the focus of this litigation, consisted of increasing Benjamin's attendance at the BASS program from two to three afternoons per week, and the substitution of an individualized program at the Driscoll School two days per week for the Driscoll program which Benjamin previously attended three days per week.

34 C.F.R. § 300.504(a), the regulation implementing the statutory notice requirements of the EAHCA, provides in pertinent part that, "[w]ritten notice which meets the requirements under § 300.505 must be given to the parents of a handicapped child a reasonable time before the public agency:

> (1) proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child...."

The notice required by this section must advise the parents of the agency's proposed action and reasons therefor, any options rejected by the agency, and all procedural safeguards available to the parents with regard to the proposed action. 34 C.F.R. § 300.505.

In the instant case, the Bureau determined that the change in Benjamin's after-school program constituted a "change in educational placement" within the meaning of 34 C.F.R. § 300.504(a) and that Brookline failed to give notice to the parents in conformity with 34 C.F.R. § 300.505 regarding the change. The Bureau further held that not every change in a handicapped child's IEP triggers the statutory notice requirements of the EAHCA. Rather, notice is required only prior to "significant changes" in the IEP. The change in Benjamin's after-school program was found by the Bureau to be significant.

The court has serious doubt as to whether the undisputed facts set forth in the record support the Bureau's conclusion that Brookline "propose[d] to initiate or change ... the educational placement" of Benjamin. In a memorandum dated June 25, 1984, Adrenna Antreasian, an educational consultant/parent trainer, recommended that Benjamin not continue at the Driscoll program. However, there is no evidence that Brookline acted on this independent consultant's recommendation. The change in Benjamin's after-school program rather was prompted by the privately-operated Driscoll program's refusal to accept Benjamin for the fall of 1984. Furthermore, the record strongly suggests that Mr. Golden, not Brookline, proposed the change.[1] On August 2, 1984 Mr. Golden requested that Benjamin's attendance at the BASS program be increased to five afternoons per week. This change did indeed occur by mid-fall of 1984. Brookline's placement of Benjamin in an individualized program at the Driscoll School for the period prior to his formal admission to BASS for five afternoons per week does not suggest very persuasively any proposal or initiation of change on the part of Brookline.

However, the court's decision rests primarily on the conclusion that the modification in Benjamin's after-school program does not constitute a "change in education-

---

1. The undisputed fact that Mr. Golden had actual prior knowledge of the change raises the issue of whether full written notice is required by the EAHCA in such circumstances. The court does not rely on this fact in reaching its conclusion nor decide the issue raised thereby. However, the fact of actual knowledge casts a shadow over the parents' motives for pressing the issue of Brookline's noncompliance with statutory notice requirements at the Bureau hearing. The purpose of the notice requirements is to involve parents in important educational decisions involving their children and to inform them in a timely fashion of their right to a hearing. It is doubtful whether this purpose would be well served by requiring full written notice to parents who are not only intimately involved in their child's education, but also exhaustively familiar with their procedural rights under the EAHCA.

al placement" within the meaning of the EAHCA. An examination of the case law construing the statute's "change in educational placement" language compels the conclusion that the modification which occurred in the instant case does not fall within the statutory definition. *See, e.g., Concerned Parents v. New York City Board of Education,* 2d Cir.1980, 629 F.2d 751, cert. denied, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (school closing not a change in educational placement where children are transferred to similar programs in other schools); *Lamont X. v. Quisenberry,* S.D. Ohio, 1984, 606 F.Supp. 809 (expulsion is a change in educational placement); *Stock v. Massachusetts,* 1984, 392 Mass. 205, 467 N.E.2d 448 (the decision to graduate a child, thus terminating his eligibility for special education services is a change in educational placement); *S–1 v. Turlington,* 5th Cir.1981, 635 F.2d 342 (transfer of child from classroom to home-based tutoring is a change in educational placement).

The cases cited herein make clear that for a modification to qualify as a "change in educational placement", it must affect the child's learning experience in some significant way. Educational agencies must not modify fundamentally a child's educational placement without notice. However, they also must be given sufficient latitude in determining how to educate a given child. *Lamont X, supra* at 814.

In the instant action, the record shows that the adjustments made to Benjamin's after-school program were more superficial than substantive. The location of the program continued at the Driscoll School, Benjamin's one-on-one aides were identical, and the duration of his program was identical. Furthermore, even though Benjamin was officially attending an individualized program at the Driscoll School two days per week, he was invited to join the activities of the children in the BASS program prior to his acceptance to that program on a full-time basis. He had contact with the non-handicapped children in the BASS program on all five days and thus, the "mainstreaming" component of his after-school program remained on a similar level after the change. Finally, the BASS program was substantially similar to the Driscoll program that Benjamin had previously attended. Both programs were unstructured, extended day-care programs for nonhandicapped children, operated by parents, and supervised by the same personnel. The transfer of Benjamin from the Driscoll Program to the BASS program clearly would not qualify as a change in educational placement. A different result is not warranted where Benjamin spends two afternoons per week in an individualized program consisting of informal, rather than official participation in the BASS program. Because the court finds that the Bureau's decision was not based on a preponderance of the evidence (20 U.S.C. § 1415(e)(2)), it grants plaintiff's motion for summary judgment; and it is ordered that the decision of the Bureau is reversed insofar as it found that the change in Benjamin's after-school program constituted a change in educational placement, requiring full written notice under 34 C.F.R. §§ 300.504 and 300.-505.