Donohue, J.
The plaintiff moves this Court to issue a preliminary injunction enjoining the defendant’s enforcement of its Drug and Alcohol Testing Policy and Procedures. To support its motion the plaintiff argues that: (1) It will suffer irreparable harm if this Court does not grant injunctive relief; (2) the potential harm to the plaintiff outweighs any harm to the defendant; (3) it has a strong likelihood of succeeding on the merits; (4) issuing a preliminary injunction is in the public’s interest; and (5) the random testing of employees who are not motor equipment operators violates Article 14 of the Massachusetts Declaration of Rights.
For the following reasons, this Court grants in part and denies in part the plaintiffs motion.
BACKGROUND
On February 15, 1994, the United States Department of Transportation published a rule (DOT rule) requiring all employers who operate commercial motor vehicles in interstate commerce to adopt a controlled-substance testing program. The purpose of the DOT rule is to “establish employer-based alcohol and controlled-substances testing programs to help prevent accidents and injuries resulting from the misuse of alcohol and controlled substances by drivers of commercial motor vehicles.” Controlled Substances and Alcohol Use and Testing; Rule and Proposed Rule, 49 Fed. Reg. 7494 (1994) (to be codified at 49 C.F.R. §382). The DOT rule covers inter- and intrastate trucks and motor coaches operated by local governments. The DOT rule expressly stated that cities, such as Worcester, were to implement the requirements of the rule by January 1, 1995.
Pursuant to the DOT rule, the defendant prepared the Comprehensive Drug and Alcohol Testing Policy and Procedures (Policy). The defendant patterned the Policy on the requirements of the DOT rule. In several areas, however, the defendant’s Policy is more stringent than the DOT rule. First, whereas the DOT rule provides for the testing of only commercial motor vehicle operators, the defendant’s Policy provides for the testing of any employee involved in an “activity preparatory to operating a commercial motor vehicle.” Second, an employee violates the DOT rule when he has a blood alcohol content of 0.02 or greater. An employee violates the defendant’s Policy, however, when he has a blood alcohol content greater than 0.00.
In November 1994, the defendant sent a copy of the proposed Policy to the plaintiff. Both parties engaged in impact bargaining that resolved some areas of disagreement concerning the proposed Policy. On December 13, 1994, the defendant made its final proposal to the plaintiff. The plaintiff did not respond and, therefore, the defendant notified the plaintiff that an impasse existed. On January 1, 1995, the defendant implemented the Policy. On January 5, 1995, the plaintiff filed a charge of prohibited practice pursuant to G.L.c. 150E with the Massachusetts Labor Relations Commission.
On January 9, 1995, the plaintiff filed a complaint in this Court also alleging that the defendant violated G.L.c. 150E §10(a)(5). The plaintiff now moves for an injunction to prevent the enforcement of the Policy.
ANALYSIS
In determining whether to grant a preliminary injunction, this Court considers the balancing test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). First, the court must evaluate, in combination, “the moving party’s claim of injury and its chance of success on the merits.” Id. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, the [court] must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. “In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity.” Id. at 617 n.l 1. Moreover, in appropriate cases the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993); Biotti v. Board of Selectmen, 25 Mass.App.Ct. 637, 640 (1988). Finally, a preliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries the burden of persuasion. C. Wright & A. Miller, 11 Federal Practice & Procedure §2948, at 428-29 (1973).
1. Testing of an Employee Who is Not a Motor Equipment Operator A. Random Testing
The plaintiff argues that random testing of an employee who is not a Motor Equipment Operator (MEO) constitutes an unreasonable search violating Article 14 of the Massachusetts Declaration of Rights. This Court agrees. In Guiney v. Police Commissioner of Boston, 411 Mass. 328 (1991), the Supreme Judicial Court held that the City of Boston’s random drug testing of police officers violated art. 14. Id. at 332. Unlike the standards set forth in the DOT rule, which only provide for the random testing of “drivers,” the defendant’s Policy defines a person subject to random testing to include an employee engaged in an “activity preparatory to operating a commercial vehicle.”
The defendant bears the burden of presenting facts to warrant random drug testing and the court cannot *374 “infer or assume the existence of facts that might justify the governmental intrusion.” Guiney, supra at 332. The DOT rule provides no basis for the defendant’s application of random testing to anyone other than a “driver.” Nor has the defendant provided any other facts justifying the random testing of an employee who is not an MEO. Therefore, because of the Supreme Judicial Court’s holding in Guiney, this Court finds that the plaintiff has a strong chance of succeeding on the merits. See Packaging Industries Group, supra at 617. Given the plaintiffs likelihood of succeeding on the merits coupled with the intrusiveness into an individual’s privacy that results from the random and unannounced collection of a sample, this Court concludes that the plaintiff has established a prima facie case warranting the issuance of a preliminary injunction concerning the random testing of employees who are not MEOs.
B. Reasonable Suspicion Testing
While the Supreme Judicial Court has held that random drug testing clearly violates art. 14 it has not held that reasonable suspicion testing violates art. 14. This Court disagrees with the plaintiffs contention that Guiney, supra forbids any testing of an employee who is not an MEO. In Guiney, the Supreme Judicial Court only addressed the issue of “whether [an] unannounced, warrantless, suspicionless, random urinalysis testing procedure ... is an unreasonable search and seizure under art. 14.” Guiney, supra at 330. The Supreme Judicial Court did not address the issue of whether reasonable suspicion testing violates art. 14. Therefore, this Court refuses to read Guiney as standing for the proposition that reasonable suspicion testing of an employee who is not an MEO violates art. 14.
Since Guiney was the plaintiffs only basis for seeking an injunction concerning the reasonable suspicion testing of an employee who is not a MEO, this Court finds that plaintiff has little chance of succeeding on the merits. See Packaging Industries Group, supra at 617. Moreover, the plaintiff has also failed to meet its burden of clearly showing that reasonable suspicion testing would result in an irreparable harm. See id.
II.Zero Tolerance (0.00 BAC)
The plaintiff contends that the defendant’s adoption of “zero tolerance” for blood alcohol content is bad faith bargaining which in turn constitutes an irreparable harm to the plaintiff. Additionally, the plaintiff argues that the DOT’S preference for a 0.04 blood alcohol content trigger precludes the defendant from adopting a policy of zero tolerance.
This Courtis unpersuaded by the plaintiffs contentions. First, nothing in the DOT rule precludes the defendant from adopting a policy of zero tolerance. In fact, the defendant’s policy of zero tolerance is wholly consistent with the purpose of the DOT rule.
Second, the plaintiff has failed to show how a zero tolerance policy would result in irreparable harm. In light of the public’s interest in safe highways and the substantial risk of accidents and injuries that would accompany the granting of an injunction, the plaintiffs failure to explain how a policy of zero tolerance constitutes an irreparable harm is fatal to the its case.
Since the plaintiff has failed to meet its burden of showing a substantial likelihood of an irreparable harm, and this Court does not foresee the plaintiff succeeding on the merits of this claim, there is no basis for granting a preliminary injunction. Packaging Industries Group, supra at 617.
III.Administrative Leave Without Pay
The plaintiff asserts that the Policy’s provision providing for administrative leave without pay when a covered employee tests positive for a banned substance will irreparably harm the plaintiff. In particular, the plaintiff argues that because the administrative leave provision is unfair, ridged, and goes beyond the DOT rule it will irreparably harm the plaintiff.
Again, the plaintiff has not convinced this Court that the administrative leave provision will irreparably harm the plaintiff. The plaintiff has presented no facts or credible arguments that clearly persuade this Court that a recognizable harm exists. See Packaging Industries Group, supra at 617. Therefore, since the plaintiff again has failed to make the necessary showing of an irreparable harm, this Court finds no basis for enjoining enforcement of the administrative leave provision.
IV.Use of Foremen to Determine Reasonable Suspicion
The plaintiff contends that using foremen to initiate reasonable suspicion testing will irreparably harm the morale of employees by making them unmanageable. Additionally, the plaintiff asserts that there is significance to the DOT rule’s silence on what level of supervisor is to initiate reasonable suspicion testing.
The DOT rule provides that a supervisor will determine reasonable suspicion to test an employee. See 59 Fed. Reg. at 7509. Determining who is a supervisor is left to the discretion of the employer. The plaintiffs argument that foremen-initiated reasonable suspicion testing will create a substantial risk of irreparable harm is tenuous at best. Again, this Court is unpersuaded that the plaintiff will suffer an irreparable harm. See Packaging Industries Group, supra at 617.
V.Violation of the Collective Bargaining Agreement
The plaintiff alleges that the defendant has violated Article 25 of the Collective Bargaining Agreement. The plaintiff, however, does not specify how this constitutes an irreparable harm. As a general rule, unless a party will suffer an irreparable harm, a party to a collective bargaining agreement must exhaust its administrative remedies before seeking relief in court. Murphy v. Administrator of the Division of Personnel Administration, 377 Mass. 217 (1979); Stock v. Massa *375 chusetts Hospital School, 392 Mass. 205 (1984). Therefore, since the plaintiff has not shown that it will suffer an irreparable harm, this Court concludes that any dispute concerning a violation of the collective bargaining agreement or the parties obligation to bargain in good faith is best left to the discretion of the Massachusetts Labor Relations Commission.
VI. Conclusion
After reviewing all of the plaintiffs arguments this Court concludes that, except for the provision concerning the random testing of an employee who is not an MEO, the plaintiff has not met its burden of clearly showing why this Court should enjoin the defendant’s Policy. Moreover, this Court finds that the defendant’s Policy promotes public safety by preventing accident and injuries resulting from the misuse of alcohol and controlled substances by those involved in operating commercial motor vehicles.
ORDER
For the foregoing reasons, it is hereby ORDERED that a preliminary injunction issue, restraining the defendant from randomly testing employees who are not Motor Equipment Operators. It is further ORDERED that the plaintiffs motion for a preliminary injunction restraining all other provisions of the defendant’s Policy be DENIED.