USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1006 

 KATHLEEN H., LARRY H. AND DANIEL H.,
 Plaintiffs, Appellants,

 v.

 MASSACHUSETTS DEPARTMENT OF EDUCATION, ET AL.,
 Defendants, Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Richard G. Stearns, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Selya, Circuit Judge,

and Schwarzer, Senior District Judge.

 _____________________

 Maureen A. Lee, with whom John P. Lee and Law Office of
John P. Lee were on brief, for appellants.
 Nicola Favorito, with whom Mary Ellen Sowyrda and Murphy,
Hesse, Toomey & Lehane were on brief, for appellees.

 ____________________

 September 4, 1998
 ____________________ SCHWARZER, Senior District Judge. Appellants Larry and
Kathleen H. reside in Mansfield, Massachusetts with Daniel H.,
their son. Daniel is a child with disabilities within the meaning
of the Individuals with Disabilities Education Act (IDEA), 20
U.S.C. 1400-1485. When Daniel's parents and the Mansfield
public school system were unable to agree on the services to be
provided Daniel, the parents removed him from the public school,
unilaterally enrolled him in the Learning Prep School (LPS) and
requested a hearing with the Massachusetts Bureau of Special
Education Appeals (BSEA). Following the hearings, the BSEA ruled
in favor of the Mansfield School Committee (Mansfield), finding
that with some modifications to their program, Mansfield was and is
capable of meeting the child's needs, LPS was overly restrictive,
and the parents were not entitled to be reimbursed for the LPS
expenses. Appellants then sought judicial review in district
court, which upheld the BSEA's decision and denied their
application for attorneys' fees. They now appeal from the judgment
of the district court. We have jurisdiction pursuant to 28 U.S.C.
 1331, and we affirm.
 OVERVIEW
The IDEA was enacted to ensure that all children with disabilities
receive a "free appropriate public education [FAPE] . . . designed
to meet their unique needs." 20 U.S.C. 1400(c). "While a state
may not depart downward from the minimum level of appropriateness
mandated under federal law, 'a state is free to exceed, both
substantively and procedurally, the protection and services to be
provided to its disabled children.'" Roland M. v. Concord Sch.
Comm., 910 F.2d 983, 987 (1st Cir. 1990) (quoting Burlington v. 
Department of Educ., 736 F.2d 773, 784-85 (1st Cir. 1984)
("Burlington II")). Massachusetts has chosen a higher standard: 
The Department of Education is required to administer programs that
"'assure the maximum possible development of a child with special
needs.'" Stock v. Massachusetts Hosp. Sch., 392 Mass. 205, 211,
467 N.E.2d 448, 453 (1984) (quoting Mass. Gen. Laws ch. 71B 2);
see also Roland M., 910 F.2d at 987; David D. v. Dartmouth Sch.
Comm., 775 F.2d 411, 423 (1st Cir. 1985). 
 The FAPE is implemented through an individual education
plan (IEP), a written statement that sets out an educational
program to meet the particularized needs of a child with
disabilities. 20 U.S.C. 1301(a)(20). In Massachusetts, an IEP
for a child is developed by TEAM, a group of individuals including
"the parents, the child's teacher, designated specialists, and a
representative of the [local education agency]." Roland M., 910
F.2d at 988. The IEP must be reviewed annually and revised when
necessary. See id.
 Parents who are dissatisfied with their child's IEP can
present a complaint and obtain a due process hearing to resolve the
problem. See 20 U.S.C. 1415(b)(1)(E) & (2). In Massachusetts,
this function is performed by the BSEA. See Roland M., 910 F.2d at
987. During the pendency of proceedings under 1415, the child is
to "remain in the then current educational placement." 20 U.S.C.
 1415(e)(3). If the school district cannot provide the FAPE
itself, it can recommend that the child be placed in a private
facility at no cost to the parents. See 34 C.F.R. 300.401(a)(2). 
However, parents who "'unilaterally change their child's placement
during the pendency of review proceedings, without the consent of
state or local school officials,' . . . are entitled to
reimbursement only if . . . the public placement violated IDEA and
[] the private school placement was proper under the Act." 
Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15, 114
S. Ct. 361, 366, 126 L. Ed. 2d 284 (1993) (quoting School Comm. v. Department of Educ., 471 U.S. 359, 373-74, 105 S. Ct. 1996, 2004-
05, 85 L. Ed. 2d 385 (1985)). 
 Judicial review of the decision of the BSEA presents a
two-fold inquiry: Whether the state has complied with the
procedures of the Act, and whether the IEP developed through those
procedures is "reasonably calculated to enable the child to receive
educational benefits." Board of Educ. v. Rowley, 458 U.S. 176,
206-07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982). The Act
imposes procedural requirements upon state and local education
agencies to "assure that children with disabilities and their
parents . . . are guaranteed procedural safeguards with respect to
the provision of free appropriate public education." 20 U.S.C.
 1415(a). "The primary safeguard is the obligatory development of
an individualized education program (IEP)." Roland M., 910 F.2d at
987 (citing Rowley, 458 U.S. at 181). The IEP must contain
"statements about the child's current performance, long-term and
short-term instructional targets, and objective criteria for
measuring the student's advance." Id. (citing 20 U.S.C. 1401(19)
and 34 C.F.R. 300.346); see also Rowley, 458 U.S. at 206 n.27. 
And, as noted, a school's programs must "assure the maximum
possible development of a child with special needs," subject to the
Act's preference for "mainstreaming," i.e., educating handicapped
children and non-handicapped children together "to the maximum
extent appropriate" and providing special education in "the least
restrictive environment." Id. (citing 20 U.S.C. 1412(5) and 34
C.F.R. 300.552(d)). 
 FACTUAL AND PROCEDURAL HISTORY
 Daniel H. suffers from a language-based learning
disorder. From kindergarten through the sixth grade, Daniel
attended Mansfield public schools. In the first, second and third
grades, Daniel received special education services in accordance
with his IEP with a 502.4 prototype. In the fourth grade,
Daniel's TEAM modified his IEP to a 502.3 prototype, and he was
mainstreamed for mathematics. In the fifth grade, Daniel was
mainstreamed in all content areas after he successfully completed
the Stevenson Reading and Literature Program, a special education
curriculum, in accordance with his 1992-93 IEP.
 In 1993, before Daniel entered the sixth grade, TEAM
determined that a 502.1 program would provide him with the least
restrictive appropriate educational environment. The 1993-94 IEP
proposed that Daniel participate in a regular education program,
with one-half hour per week of speech and language monitoring and 
use of a notebook to exchange information between the home and the
school. Daniel's parents deferred their approval of the IEP until
they could obtain an independent evaluation of Daniel by the New
England Medical Center (NEMC).
 NEMC evaluated Daniel in November 1993 and Daniel's
mother gave a copy of the evaluation to Mansfield school officials. 
NEMC determined that Daniel had difficulties processing auditory
information, retrieving words, and formulating sentences. He
performed below average on reading and language tests but scored
well in mathematics. NEMC recommended small group speech therapy
as well as weekly consultations between a speech pathologist and
Daniel's classroom teacher. 
 Around the same time, Daniel began having several
problems. Academically, Daniel's mother felt that he was
struggling with his homework because it often took him three to
four hours to complete. Socially, he incurred several disciplinary
infractions for fighting with other students and he began
defecating in his pants. As a result, Kathleen H. arranged for
Daniel to be counseled by a psychologist.
 After receiving NEMC's evaluation, Kathleen H. asked TEAM
to modify the 1993-94 IEP to incorporate NEMC's recommendations. 
TEAM met in December 1993 and rewrote the IEP to reflect the
special services that Daniel was then actually receiving, which
included thirteen forty-minute support periods each week in the
mainstream classroom, but refused to formally adopt NEMC's
recommendations. In turn, Daniel's parents rejected the modified
IEP on January 2, 1994. On February 7, 1994, the school offered to
supplement Daniel's special education program by providing small
group speech and language services twice a week, to fund regular
consultations between NEMC evaluators and Mansfield personnel, and
to provide Daniel with a homework organization sheet to supplement
his notebook. Daniel's parents never responded to this offer.
 TEAM met again in March 1994, to prepare Daniel's seventh
grade IEP. The 1994-95 IEP proposed a 502.2 prototype program
consisting of the thirteen forty-minute support periods per week in
the mainstream classroom he was then receiving, supplemented by two
forty-minute periods of speech and language instruction and
consultation to Daniel's classroom teachers by the speech and
language providers. Attached to the IEP were NEMC's
recommendations which Mansfield would implement "where
appropriate," and Mansfield offered to fund consultations between
Daniel's teacher and NEMC evaluators. Daniel's parents rejected
the proposed IEP on March 31, 1994, and enrolled Daniel at LPS for
the 1994-95 school year. 
 Daniel's parents then appealed to the BSEA. Following
hearings, the hearing officer issued her decision. Her salient
findings were that (1) with some modifications, Mansfield is and
was capable of meeting Daniel's needs; (2) while Mansfield made
procedural errors in the 1993-94 and 1994-95 IEPs, they did not
rise to the level of noncompliance; (3) LPS was overly restrictive;
and (4) the parents should not be reimbursed for the LPS expenses
incurred during the 1994-95 period. The hearing officer found that
given Daniel's progress during his first five years, it was
reasonable for Mansfield to place him in an integrated class. 
However, she faulted Mansfield for placing too much emphasis on
Daniel's classroom performance as an evaluation tool and agreed
with appellants that the special services provided Daniel in the
sixth grade were insufficient to maximize his potential. She
listed several technical deficiencies in the IEPs: (1) They failed
to specify Daniel's current level of performance and his learning
style; (2) they failed to provide sufficient criteria for measuring
his achievement; (3) they failed to specify one-on-one instruction
in speech and language skills and individualized counseling on
issues associated with adolescence; and (4) they failed to gather
all this relevant information before writing Daniel's sixth grade
IEP. Nevertheless, she found, that Mansfield had not acted in bad
faith and that the IEPs lack of specificity did not deny Daniel
substantive services. And she concluded, "The procedural mistakes
in the writing of the IEP are not grave enough to assume that
[Mansfield] lacks the capacity to develop or implement a special
education program for Daniel."
 Daniel's parents then sought judicial review. The
district court upheld the BSEA decision, finding that (1)
appellants had failed to show that the 1993-94 and 1994-95 IEPs
were not adequate and appropriate for Daniel, and (2) the drafting
deficiencies were matters of form rather than substance and do not
impeach the results actually achieved. Because it found that
Daniel thrived in the mainstream experience and Mansfield was
willing and able to provide the further help he needed, it held
that Daniel's parents were not entitled to recover the cost of
enrolling Daniel in LPS. Finally, the court determined that
Daniel's parents were not prevailing parties, and therefore not
entitled to recover their attorneys' fees and costs.
 DISCUSSION
I. BSEA DECISION
 A. Standard of Review
 "The ultimate question for a court under the Act is
whether a proposed IEP is adequate and appropriate for a particular
child at a given point in time." Burlington II, 736 F.2d at 788. 
The district court's resolution of that question is a mixed
question of law and fact that we review for clear error "[a]bsent
a showing that the wrong legal rule was employed." Roland M., 910
F.2d at 990. We "accept a district court's resolution of questions
anent adequacy and appropriateness of an IEP so long as the court's
conclusions are not clearly erroneous on the record as a whole." 
Id. at 990-91. 
 B. Merits
 Appellants contend that the district court erred in
concluding that the IEPs were adequate and appropriate to maximize
Daniel's development in the least restrictive environment and claim
the court's decision is unsupported by the record. They fail,
however, to demonstrate clear error.
 With regard to the 1993-94 IEP, appellants claim that the
court erred in finding that Daniel made encouraging progress in the
regular classroom in the first through fifth grades. They allege
that Daniel "was being taught in a resource room outside of the
regular education classroom" during these years, and that the court
"totally ignored the facts contained in the record regarding
Daniel's lack of progress during the sixth grade." The court's
finding was based on the detailed findings of the hearing officer
who reached the same conclusion. Its review was appropriately
"thorough yet deferential." Roland M., 910 F.2d at 989. 
Appellants have failed to demonstrate that the court committed
error.
 With respect to the 1994-95 IEP, appellants contend that
the court erred in finding that the changes ordered by the hearing
officer simply gave a more accurate account of the services Daniel
had actually received. The hearing officer ordered Mansfield to
adopt certain NEMC recommendations regarding increased speech and
language instruction, small-group reading and writing instruction,
and bi-weekly counseling. She also found, however, that with
proper accommodations, Daniel's needs can be met at Mansfield,
which is the least restrictive environment for him. And she
concluded that Mansfield's procedural errors did not rise to the
level of noncompliance. Thus, even if the IEP was initially
deficient, our focus in assessing its adequacy is on the IEP as it
emerges from the administrative review process. See Roland M., 910
F.2d at 988; see also Amann v. Stow Sch. Sys., 982 F.2d 644, 650-51
(1st Cir. 1992) (IEP adequate and appropriate even though hearing
officer ordered modifications). We discern no error. 
 Appellants also rest their argument on the IEP proposed
for 1995-96, pointing out that its recommendation to place Daniel
in a 502.4 prototype program (as opposed to the 502.2 prototype in
the 1994-95 IEP) contradicts the court's findings. Under the
IDEA's scheme, however, an IEP must be reviewed annually and
revised when necessary. The fact that Mansfield revised Daniel's
IEP between the 1994-95 and the 1995-96 school years is not
evidence that the IEP for the previous year was inadequate.
 We conclude that appellants have failed to demonstrate
clear error in the district court's ruling that the IEPs were
adequate and appropriate. See Burlington II, 736 F.2d at 794
(parents bear burden of proving IEP's inadequacy); see also Amann,
982 F.2d at 650 (same). As we stated in Roland M., "[b]efore an
IEP is set aside, there must be some rational basis to believe that
procedural inadequacies compromised the pupil's right to an
appropriate education, seriously hampered the parents' opportunity
to participate in the formulation process, or caused a deprivation
of educational benefits." 910 F.2d at 994. The district court was
satisfied that appellants' showing failed to meet that test and we
see no clear error in its conclusion.II. ATTORNEYS' FEES AND COSTS
 The IDEA provides that a "prevailing party" may be
awarded attorneys' fees and costs:
 In any action or proceeding brought under this
 subsection, the court, in its discretion, may
 award reasonable attorneys' fees as part of
 the costs to the parents or guardian of a
 child or youth with a disability who is the
 prevailing party.

20 U.S.C. 1415(e)(4)(B). The standards governing the award of
attorneys' fees under 42 U.S.C. 1988 are applicable to awards
under the IDEA. See Hensley v. Eckerhart, 461 U.S. 424, 433 n.7,
103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983); Jodlowski v. Valley
View Community Unit Sch. Dist. # 365-U, 109 F.3d 1250, 1253 n.2
(7th Cir. 1997); Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d
720, 729 (10th Cir. 1996); Aby-Sahyun v. Palo Alto Unified Sch.
Dist., 843 F.2d 1250, 1252 (9th Cir. 1988). The district court
denied the application for fees, finding that appellants were not
prevailing parties because: (1) They did not receive "the
principal relief they requested, that is, reimbursement of the LPS
tuition" and (2) the changes made in the IEPs either "simply gave
a more accurate account of the services Daniel had actually
received" or reflected minor and technical changes. We review the
district court's denial of attorneys' fees for abuse of discretion. 
See Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1301 (1st Cir.
1997) (denial of attorneys' fees under 42 U.S.C. 1988). 
 To qualify as a prevailing party, a litigant must
demonstrate that: (1) He obtained relief on a significant claim in
the litigation; (2) such relief effected a material alteration in
his legal relationship with the defendant; and (3) the alteration
is not merely technical or de minimis in nature. See Texas State
Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-93,
109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989); Farrar v. Hobby, 506
U.S. 103, 111-12, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992) ("a
plaintiff 'prevails' when actual relief on the merits of his claim
materially alters the legal relationship between the parties by
modifying the defendant's behavior in a way that directly benefits
the plaintiff"); see also Hensley, 461 U.S. at 433 (litigant is a
prevailing party "if [he] succeed[s] on any significant issue in
litigation which achieves some of the benefit the parties sought in
bringing the suit"). A party may demonstrate the changed legal
relationship in one of two ways: "The party either must enjoy
bottom-line success in the litigation or act as a catalyst in
causing the desired alteration." Paris v. U.S. Dept. of Hous. &
Urban Dev., 988 F.2d 236, 238 (1st Cir. 1993); see also Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). 
 Appellants contend that they were prevailing parties
because they succeeded on several significant issues. They contend
that their overall goal was to increase the special education
services provided to their son, "not to obtain reimbursement of the
private school tuition." The record belies that contention. The
specific relief appellants sought in their complaint was a
determination that LPS was appropriate for Daniel and that they
were entitled to reimbursement for the expenses of LPS. The
hearing officer denied this relief. We agree with the district
court's finding (which appellants do not dispute) that the only
relief they received from the BSEA decision was in the form of some
modifications to the 1993-94 and the 1994-95 IEPs. "[T]he
plaintiff cannot qualify as a 'prevailing party' if his 'success on
a legal claim can be characterized as purely technical or de
minimis. . . .'" Kerry B. v. Union 53 Pub. Sch., 882 F. Supp. 184,
187 (D. Mass. 1995) (quoting Texas State Teachers Ass'n, 489 U.S.
at 792). Even if the BSEA decision were seen as resulting in some
improvements in Daniel's program, it was not an abuse of discretion
for the district court to deny attorneys' fees where the changes
ordered are de minimis "in the context of the Parents' broader
goals in this case." Monticello Sch. Dist. No. 25 v. George L.,
102 F.3d 895, 908 (7th Cir. 1996) (affirming denial of attorneys'
fees despite changes to IEP ordered by hearing officer). 
 Nor can appellants prevail under a catalyst theory. To
qualify, appellants must show "'(1) a causal connection between the
litigation and the relief obtained, and (2) that the fee-target did
not act gratuitously.'" Williams, 113 F.3d at 1299 (quoting
Guglietti v. Secretary of Health & Human Servs., 900 F.2d 397, 401
(1st Cir. 1990)); see also Payne v. Board of Educ., Cleveland City
Sch., 88 F.3d 392, 398 (6th Cir. 1996). Appellants argue that
their pursuit of their legal remedies caused Mansfield to provide
additional educational services under the 1995-96 IEP (changes
which the district court found to be minor and mostly technical in
nature). There is no indication, however, that Mansfield would 
have failed to include a 502.4 prototype and additional special
education services in Daniel's 1995-96 IEP but for the
administrative hearing. See Payne, 88 F.3d at 400 ("Even where a
defendant makes some changes following administrative proceedings
that comport with a plaintiff's demands, if the actions are taken
unilaterally by the defendant and there is no indication that they
would not have transpired had the plaintiff not pursued the
administrative process, the plaintiff cannot qualify as a
'prevailing party' for fee-shifting purposes.") (citing Combs v. School Bd. of Rockingham County, 15 F.3d 357, 362 (4th Cir. 1994)). 
The hearing officer made no recommendations for future IEPs or
suggestions that Daniel should be placed in a more restrictive
learning environment. Rather, the hearing officer found that
"[Mansfield's] personnel has [sic] always had Daniel's educational
best interest at heart," and "[t]he amount of progress achieved by
[Daniel] is the result of the concerted actions of a truly
committed school, the great support of his parents and Daniel
himself, all working together as they should." Mansfield held
multidisciplinary team meetings and developed IEPs in accordance
with the IDEA before the request for a hearing was made and
continued to comply with the IDEA without regard to that request. 
See Payne, 88 F.3d at 400; Salley v. St. Tammany Parish Sch. Bd.,
57 F.3d 458, 468 (5th Cir. 1995) (denying "prevailing party" status
where the plaintiff was well aware that a beneficial result might
have been obtained at any time without regard to the existence of
due process hearings); Wheeler v. Towanda Area Sch. Dist., 950 F.2d
128, 132 (3d Cir. 1991) ("Neither the hearing officer nor the
Secretary ordered the School District to do anything that they were
not already doing."). Appellants not having met the first prong of
the catalyst test, it is unnecessary to consider the second. 
 Because we agree that appellants did not obtain significant
relief as a result of the litigation, we hold that the district
court did not abuse its discretion in denying their application for
fees.
 The judgment is AFFIRMED.