Tashima **WILLIAMS,** Marsha **Monterio,**
Mikhail **Tsyrkin,** and Wanda **Small,**
Plaintiffs,

v.

**HANOVER HOUSING AUTHORITY,**
Danvers Housing Authority, Arlington
Housing Authority, and Henry Cisneros,
in his capacity as Secretary of the United States Department of Housing and
Urban Development, Defendants.

Civ. A. No. 93–10964–WGY.

United States District Court,
D. Massachusetts.

Dec. 12, 1994.

Judith Liben, Boston, MA, Henry Korman, Mass. Law Reform Inst., Boston, MA, for plaintiffs Tashima Williams, Marsha Monterio, Wanda Small, and Mikhail Tsyrkin.

Marsha Donovan, Danvers, MA, for defendant Danvers Housing Authority.

Judith S. Yogman, Atty. Gen. Office, Boston, MA, for movant Executive Office of Communities and Development.

### MEMORANDUM AND ORDER FOR CERTIFICATION

YOUNG, District Judge.

This case concerns the portability of Section 8 housing vouchers ("Section 8 vouchers" or "Section 8 subsidies") provided by the Department of Housing & Urban Development ("HUD") under the United States Housing Act of 1937, 42 U.S.C.A. § 1437 *et seq.* (1978 & Supp.1993).[1] Specifically, the questions before this Court are (a) whether the Housing Act and its implementing regu-

---

1. "Section 8" refers to a section of the revised United States Housing Act of 1937 authorizing a number of distinct housing programs. The case at issue involves subsidies granted under the Section 8 Rental Certificate & Voucher Programs which are regulated by HUD pursuant to 42 U.S.C.A. § 1437f(r). *See* 24 C.F.R. Parts 882, 887 (1994).

lations and guidelines require Massachusetts public housing authorities to contract with landlords outside their municipal boundaries where a failure to do so would result in forfeiture of a subsidy by the beneficiary, and in the alternative, (b) whether Massachusetts law and the federal Housing and Community Development Act of 1992, Pub.L. 102–550, § 147, 106 Stat. 3715 prohibit local housing authorities from contracting with landlords outside of the community in which they are located.

The controversy arises from a 1992 amendment to the Section 8 portability rules which limit a participant to housing located "within the jurisdiction" of the public housing authority issuing the subsidy for the first twelve months of the Section 8 tenancy. The law, as amended, states in pertinent part:

> any family not living **within the jurisdiction** of a public housing agency at the time that such family applies for assistance from such agency shall, during the 12–month period beginning upon the receipt of any tenant based rental assistance made available on behalf of the family, use such assistance to rent an eligible dwelling unit located within the jurisdiction served by such public housing agency.

42 U.S.C.A. § 1437f(r)(1) (Supp.1993) (emphasis added).

Tashima Williams, Marsha Monterio, Mikhail Tsyrkin, and Wanda Small (collectively, the "Williams plaintiffs") are each the head of household of a low-income family. Each of the Williams plaintiffs—all of whom previously lived in homeless shelters or other substandard housing—applied for and received Section 8 subsidies from various local public housing authorities in Massachusetts (collectively, the "authorities" or the "housing authorities"). Because each housing authority in this action has interpreted the law of Massachusetts defining its "jurisdiction" as the municipality in which it is located, each authority told one of the Section 8 plaintiffs that he or she was required to use the Section 8 assistance to rent housing within its municipal boundaries for the first twelve months of the Section 8 tenancy. The defendant Henry Cisneros, Secretary of HUD (the "Secretary"), approved the position taken by the defendant authorities. All four families were unable to find housing within the municipality of the authority which issued the assistance and thus risked forfeiting the subsidy.[2] The Williams plaintiffs thus brought suit in this Court to restrain the housing authorities and HUD from rescinding the subsidies by tolling or freezing the subsidies' expiration dates.

Although this Court concludes that the Massachusetts authorities are neither required to nor prohibited from contracting with landlords outside their municipal boundaries, the Court certifies its interpretation of Massachusetts law to the Massachusetts Supreme Judicial Court (the "SJC") pursuant to Rule 1:03 of that court. This memorandum sets forth this Court's reasoning.

## I. BACKGROUND

In order to further its goal of helping to provide decent, safe and sanitary housing for low-income citizens, Congress authorized HUD to administer Section 8 of the United States Housing Act. *See* 42 U.S.C.A. § 1437 *et seq.* To that end, HUD promulgated rules and regulations to govern the Section 8 programs and published handbooks and notices to guide its employees and local public housing authorities. *See* 24 C.F.R. Parts 882, 887

---

**2.** The plaintiff Tashima Williams received her Section 8 subsidy from the Hanover, Massachusetts, Housing Authority in January, 1993; the plaintiff Marsha Monterio received her voucher from the Danvers, Massachusetts, Housing Authority in January, 1993; the plaintiff Mikhail Tsyrkin also received his subsidy from the Danvers Housing Authority in February, 1993; and the plaintiff Wanda Small received her subsidy from the Arlington, Massachusetts, Housing Authority in February, 1993. The executive directors of each of the three defendant authorities are also named as defendants.

Williams and the Hanover Housing Authority resolved their individual dispute during the course of the initial hearings in this lawsuit. The remaining plaintiffs, however, continued to face housing crises given the possibility that their Section 8 vouchers or certificates may expire prior to the resolution of these issues. The Hanover Housing Authority has allowed Williams to rent in a community about ten miles from Hanover.

(1994); *see also* Department of Housing and Urban Development, *Public Housing Agency Administrative Practices Handbook for the Section 8 Existing Housing Program*, Handbook 7420.7 (1979) (attached to the Agreed Statement of Facts at Ex. 7) (*hereinafter* Handbook ).

■ Congress also recognized the importance of local decision-making in housing, however, and allowed local public housing authorities to exercise a great deal of power and responsibility. *See* 42 U.S.C.A. § 1437 (Supp.1993); *Baker v. Cincinnati Metro. Hous. Auth.*, 675 F.2d 836, 839 (6th Cir.1982) (administrative housing scheme contemplates a large degree of local discretion and autonomy); *Vandermark v. Hous. Auth. of York*, 663 F.2d 436, 439 (3d Cir.1981) (same). In keeping with this administrative scheme, HUD relies on each local housing authority to determine its own area of jurisdiction and only loosely defines its jurisdiction as "any area where the [authority] determines that it is not legally barred" from administering HUD programs. 24 C.F.R. § 882.103 (1994). A housing authority's jurisdiction for Section 8 purposes, then, is the area where the authority ascertains it is "not legally barred" from contracting with private landlords to provide housing to a program participant.

In 1977, HUD was faced with conflicting legal opinions from two different Massachusetts housing authorities as to whether the authorities could legally contract with Section 8 landlords outside their municipal boundaries. Agreed Statement of Facts at ¶ 33 and Ex. 10–11. Pursuant to its own handbook, which states that a narrow definition of jurisdiction will be challenged, HUD asked the Massachusetts Executive Office of Communities and Development (the "Agency")—the state agency which oversees state and federal housing programs and supervises local public housing authorities—to seek a legal opinion from the Massachusetts Attorney General to resolve the dispute. Instead, the agency offered its own legal opinion (the "Agency Opinion") that a Massachusetts public housing authority could not contract with landlords outside its own municipality or community, except by agreement with another public housing authority. Agreed State-

ment of Facts at ¶ 34 and Ex. 12. HUD accepted the Agency Opinion as dispositive. Agreed Statement of Facts at ¶ 35 and Ex. 8. HUD continued to rely on it as such until this Court ruled to the contrary in the present case. Thus, in light of the Agency Opinion, a Section 8 recipient in Massachusetts could live outside the municipal boundaries of the public housing authority issuing the subsidy only where that authority had an agreement with the public housing authority within whose municipal boundaries the housing was to be found.

In 1992, Congress amended the portability rules of the Section 8 program, making the boundaries of a housing authority's jurisdiction much more significant and potentially damaging to the Section 8 applicant. Without altering or affecting HUD's definition of a public housing authority's jurisdiction as the area where the authority is not legally barred from contracting, the amendment limits the Section 8 participant who lives outside that jurisdiction but receives a subsidy from that authority to housing located within that public housing authority's jurisdiction for the first twelve months of the assistance. 42 U.S.C.A. § 1437f(r)(1) (Supp.1993). After that initial period, the participant can live in other areas of the state in accordance with the Section 8 mobility rules. *Id.*

The Williams plaintiffs brought this suit alleging that the regulations as interpreted by HUD deny them the equal protection of the laws and that the housing authorities wrongly interpreted their own regulations as well as Massachusetts state law. All parties in this case have agreed to an expedited resolution of the case upon a record constituting a case stated. *See Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992); *Boston Five Cents Sav. Bank v. Secretary of the Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir.1985).

Counsel argued the merits of the case on June 16, 1993. Thereafter, without reaching the equal protection issue, this Court ruled, contrary to the interpretation adopted by the defendant authorities, that under the law of Massachusetts a local public housing authority is not legally barred from contracting with landlords owning dwellings outside its politi-

cal boundaries for Section 8 purposes and that the resulting contracts are "within [its] jurisdiction." This determination satisfied HUD as an authoritative declaration of state law and bound the Massachusetts housing authorities (who promptly complied, thus solving the problem of these individual plaintiffs as framed by this complaint). As the interpretation of state law is central to the resolution of this case and presents larger public policy issues, this Court nevertheless certifies this issue to the SJC for further guidance.

## II. ANALYSIS

This Court first addresses the Williams plaintiffs' contention that the Massachusetts housing authorities must define their jurisdiction as broadly as possible and thus are required to contract with landlords outside their municipal boundaries where necessary to achieve the purpose of Section 8. In consideration of this argument, the Court looks to Section 8 and HUD regulations to determine the correct interpretation of HUD's definition of the jurisdiction of a public housing authority and whether, in light of that interpretation, HUD's acceptance of and reliance on the Agency's definition of jurisdiction is proper here.

Second, this Court addresses the question of whether the Massachusetts housing authorities are prohibited from contracting with landlords outside the municipality without approval from the housing authority with jurisdiction over the landlord. In addressing this question, the Court examines state law to decide whether the Agency Opinion (and therefore the jurisdictional boundaries used by the housing authorities and accepted by HUD) is a correct interpretation of Massachusetts law. Third, the Court addresses the amended portability provision and the constitutional right to travel.

### A. STATUTORY AND REGULATORY INTERPRETATION

#### 1. Determining Jurisdiction of a Public Housing Authority

■ The Williams plaintiffs argue that HUD's Section 8 rules and regulations must be interpreted along with its handbook guidelines as mandating that a public housing authority define its jurisdiction as broadly as possible. They contend that the only acceptable limitations on the jurisdiction of a public housing authority are specified in HUD's handbook as either 1) a state statutory provision explicitly barring a public housing authority from contracting with landlords outside its boundaries, or 2) a judicial decision or attorney general's opinion reading such a bar into the law. As there was no known judicial or attorney general's opinion addressing this matter in Massachusetts and no explicit bar in the relevant state statute, the plaintiffs argue that a public housing authority must contract with private landlords outside its boundaries if necessary for Section 8 purposes.[3] This Court rejects the Williams plaintiffs' interpretation as exceeding the scope of HUD's rules and regulations consistent with its statutory authority.

■ Courts have consistently held that government agencys' handbooks are not legally binding, but merely advisory. *See Rank v. Nimmo,* 677 F.2d 692, 698–99 (9th Cir.) (Veterans Administration handbook and circulars do not create enforceable duties; collecting cases holding that agency handbooks are merely advisory), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982); *cf. Multnomah Legal Serv. Workers Union v. Legal Serv. Corp.,* 936 F.2d 1547, 1553–55 (9th Cir.1991) (internal handbook and memorandum of Legal Services Corp., a federally created nonprofit corporation, do not have force and effect of law); *Chasse v. Chasen,* 595 F.2d 59, 64 (1st Cir.1979) (United States Customs Service circulars are internal policy pronouncements and do not create rights enforceable in federal court). Indeed, one court has explicitly stated that HUD's Section 8 handbook is an interpretive guide, not a regulation, and therefore does not have the same force as a regulation. *Vandermark v. Hous. Auth. of York,* 663

---

**3.** The Williams plaintiffs dismiss the Agency Opinion as falling short of the specific standards set forth in the handbook. They also contend the Agency Opinion misinterprets state law.

F.2d 436, 441 n. 3 (3d Cir.1981).[4] Thus, HUD's handbook provisions concerning the jurisdiction of public housing authorities are merely interpretive and, therefore, nonbinding.

If HUD had intended that a public housing authority be restricted from contracting only by an authoritative judicial decision or a state statutory provision explicitly barring such activity, HUD would have promulgated such a regulation. HUD has altered its Section 8 regulations many times since the program's inception in 1974 without incorporating the handbook provision.[5] Most recently, Congress and HUD again left the jurisdiction matter unaltered when in 1992 they amended the portability provision of the Section 8 statute and its corresponding regulations. *See* 42 U.S.C.A. § 1437f(r)(1) (Supp.1993). As HUD failed to codify the relevant handbook provision, this Court regards it as interpretive and without the force and effect of law.

While HUD's policy and the purpose of the Section 8 plan is to encourage and provide a wide choice of housing services, nowhere in the Section 8 rules and regulations is it specified that a public housing authority must contract with private landlords unless explicitly barred from doing so by state statute. Nor is it delineated precisely how a public housing authority should determine its jurisdictional area. HUD's handbook alone suggests that a public housing authority should restrict its jurisdictional area only in compliance with an express statutory bar, a judicial ruling, or an attorney general's opinion. *Handbook* 7420.7; *cf.* 24 C.F.R. Parts 882, 883, 887. The handbook provision provides three ways HUD officials can double-check a narrow determination of jurisdiction, but it is not a regulation and therefore not binding as against HUD.

■ It is this Court's view that HUD's choice of the phrase "not legally barred" in its regulations simply requires a reasonable legal determination as to the jurisdictional limits of an authority's capacity to contract by state or local law, either explicitly or implicitly. The ambiguity of the phraseology arguably reflects HUD's recognition of the possibility that contracting outside the political boundaries of the authority might run afoul of the state's regulatory framework, even though the practice is not specifically designated by state statute as unlawful. Nowhere in the regulations regarding an authority's jurisdiction has HUD inserted the word "explicitly," as the plaintiffs repeatedly assert.

## 2. HUD's Reliance on the State Agency Determination of Jurisdiction

In light of the foregoing conclusion, the Court now turns to HUD's acceptance of and reliance on the Agency Opinion as applicable to all local public housing authorities in Massachusetts.

■ A court reviewing the conduct of an administrative agency should intervene only

---

**4.** In reaching this conclusion, courts have reasoned that only agency pronouncements prescribing substantive rules, rather than interpretive rules, can be considered enforceable regulations. *See Rank,* 677 F.2d at 698. To be substantive, a rule must affect or modify law, policy or individual rights and obligations. *Multnomah,* 936 F.2d at 1554. An interpretive rule only indicates or explains the agency's interpretation of existing law or policy. *Id.* Handbook provisions which are not published and promulgated as mandated by the Administrative Procedure Act are construed as interpretive, and therefore do not have the force and effect of law. *Id.; Rank,* 677 F.2d at 698. The Williams plaintiffs rely heavily on *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), which this Court finds distinguishable. In *Thorpe,* the dispute involved a HUD circular that required local public housing authorities to explain the reasons for eviction to tenants facing that sanction. The Supreme Court held that the circular was intended to have the force and effect of law because it was issued pursuant to the agency's rule-making power and was to be incorporated into a HUD Manual that contained implementing regulations. *Id.* at 277–78, 89 S.Ct. at 523–24. The circular was thus distinguished from HUD's various handbooks and booklets that contain "mere 'instructions,' 'technical suggestions,' and 'items of consideration.'" *Id.* at 275, 89 S.Ct. at 522; *cf. Rank,* 677 F.2d at 698 n. 11 (distinguishing *Thorpe* ).

**5.** HUD also rejected a different proposed change to the jurisdictional definition in 1976. That alteration would have defined the jurisdiction of a public housing authority as that area where the authority is authorized by law to contract. Plaintiffs' Reply Memo at 2 and Ex. 1–4.

if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A) (1992); *see also Motor Veh. Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 41–43, 103 S.Ct. 2856, 2865–67, 77 L.Ed.2d 443 (1983); *Rhode Island Higher Educ. Assistance Auth. v. Secretary, United States Dep't of Educ.,* 929 F.2d 844, 855 (1st Cir.1991). Under the arbitrary and capricious standard, an agency rule or decision may not be set aside if it is rational, based on relevant factors and within the agency's statutory authority. *Motor Veh. Mfrs. Ass'n,* 463 U.S. at 42–43, 103 S.Ct. at 2866–67; *Rhode Island Higher Educ.,* 929 F.2d at 855.

■ HUD's reliance on the Agency Opinion as to jurisdiction is in keeping with its own statutory and regulatory framework. By the same reasoning, HUD's acceptance of the Agency Opinion as dispositive for all Massachusetts public housing authorities was also permissible, despite the Handbook's requirement of a legal opinion from each public housing authority outlining its jurisdiction. *See Handbook* 7420.7. Moreover, HUD's actions in this regard are neither unlawful nor arbitrary and capricious. Rather, they are arguably rational and based on relevant factors.

HUD's reliance on the Agency Opinion is reasonable and rational in light of the Agency's cabinet level position within the Massachusetts administrative framework, Mass. Gen.L. ch. 6A, § 2 (1986), and the absence of a more authoritative opinion on the issue.

The Agency is authorized by its enabling statute to give advice and counsel to federal agencies, such as HUD. Mass.Gen.L. ch. 23B, § 3 (1994). Furthermore, the SJC has held that a legal interpretation of a statute made by the agency charged with its implementation statute is entitled to significant deference. *Board of Educ. v. School Comm. of Quincy,* 415 Mass. 240, 243–44, 612 N.E.2d 666 (1993); *Cleary v. Cardullo's, Inc.,* 347 Mass. 337, 344, 198 N.E.2d 281 (1964). As the Agency's Opinion involves an interpretation of state law, HUD's treatment of the determination as extending to all public housing authorities in the state is logical and reasonable.[6] Therefore, HUD's acceptance of the Massachusetts agency interpretation is not unlawful, arbitrary, capricious, nor an abuse of discretion. Rather it is arguably reasonable, in keeping with HUD policies and well within HUD's discretion.[7]

## B. AGENCY INTERPRETATION OF STATE LAW

Having determined that HUD neither erred nor abused its discretion by accepting and relying on the Agency Opinion, the Court now turns to the opinion itself.

The opinion of the Massachusetts agency was rendered in 1977, long before the 1992 amendment to federal law making the jurisdiction of a public housing authority crucial to tenants. It was rendered against a background of differing jurisdictional views among the Massachusetts public housing authorities.[8] It is the view of this Court that

**6.** As the analysis below demonstrates, the Agency Opinion misinterprets Massachusetts law. Even so, this Court rules that HUD's reliance on the Agency Opinion as dispositive was within its discretion and statutory framework.

**7.** The Williams plaintiffs rely on *Silva v. East Providence Hous. Auth.,* 565 F.2d 1217 (1st Cir. 1977), and assert that HUD's failure to follow its handbook provision or explore other alternatives was arbitrary and capricious. *Silva* involved HUD's decision to terminate federal participation in a city's low rent housing project. Because of their potentially devastating consequences, HUD's actions required an extraordinarily detailed review by the Court to ensure that they were based on consideration of the relevant factors. *See id.* at 1223. The *Silva* court did not find HUD's actions arbitrary and capricious, however, but remanded the case for determina-

tion by the district court as to whether HUD properly explored feasible alternatives before making its decision. If not, the First Circuit directed the district court to send the matter back to HUD for reconsideration. *Id.* at 1224. The Court acknowledged that even if HUD failed to follow its own "last resort" guideline as set forth in its handbook, the agency could be found arbitrary or capricious "only in the rarest of circumstances." *Id.*

**8.** The Cambridge Housing Authority, for example, took the position that it was lawful for a public housing authority to enter into rental contracts beyond municipal boundaries. It is of some interest to note that the Executive Director of the Cambridge Housing Authority at the time this position was formulated was Lewis H. Spence, perhaps the foremost authority on public housing in the Commonwealth.

the Agency took an inappropriately narrow view of the powers granted to public housing authorities under the governing Massachusetts statute. The SJC has stated explicitly that "[a]n agency's powers are shaped by its organic statute **taken as a whole and need not be traced to specific words**." *Levy v. Board of Registration and Discipline in Medicine*, 378 Mass. 519, 524, 392 N.E.2d 1036 (1978) (emphasis added) (quoting *Commonwealth v. Cerveny*, 373 Mass. 345, 354, 367 N.E.2d 802 [1977]). In addition, the legislature does not have to "... specify, definitely and precisely, each and every ancillary act that may be involved in the discharge of an official duty." *Scannell v. State Ballot Comm'n*, 324 Mass. 494, 501, 87 N.E.2d 16 (1949).

■ The ability of a public housing authority to enter into Section 8 contracts with landlords derives from its general power to contract with and to receive funds from the federal government.[9] Mass.Gen.L. ch. 121B, § 11(c). The power to contract and receive federal funds is not limited geographically or otherwise. Although the housing authorities are created and defined by statute, they possess broad common law contractual powers similar to other corporations. *Costonis v. Medford Hous. Auth.*, 343 Mass. 108, 113, 176 N.E.2d 25 (1961).

> The statutes establishing housing authorities make it plain that such an authority, although organized by and in each city and town in cooperation with the State, is nevertheless, when organized, a complete corporate entity in itself, distinct from the municipal corporation within whose territory it is set up, and exercising its powers in its own independent right.

*Johnson–Foster Co. v. D'Amore Constr. Co.*, 314 Mass. 416, 419, 50 N.E.2d 89 (1943); *Opinion of the Justices*, 322 Mass. 745, 752, 78 N.E.2d 197 (1948). Thus, the authorities, like all corporations, have the capacity to make contracts not in contravention of any statute.

All parties agree that there is nothing contained in Mass.Gen.L. ch. 121B that specifically prohibits the authority from entering into contracts in circumstances such as those here at issue. Indeed, it appears to be the consistent administrative and judicial interpretation within the Commonwealth of Massachusetts that there are a variety of circumstances in which public housing authorities may properly enter into contracts beyond their municipal or town borders. The most that may properly be said is that "a tenant issued a Certificate of Family Participation under an (sic) [public housing authority's] standard [Section 8] Program may **normally** use that Certificate only in the city or town in which the [public housing authority] has been organized." *Holyoke Hous. Auth. v. Anthony*, No. 50435, slip op. at 4 (Mass.Super.Ct. June 16, 1983) (Volterra, J.) (emphasis added). The Agency Opinion itself contemplates contracts under its "707 program" with other public housing authorities. Moreover, the authorities may—indeed may legally be required to—enter into contracts beyond municipal boundaries in order to make "reasonable accommodation" for individuals with handicaps. *Andrews v. Springfield Hous. Auth.*, No. 91–CV–0106 (Mass. Hous.Ct. Feb. 18, 1991) (Abrashkin, J.). So it is here.

■ This Court holds that, in the limited circumstances which obtain here—where an eligible tenant cannot find housing within the confines of a city or town which has organized a public housing authority and the tenant thereby runs the risk of losing Section 8 housing assistance—a public housing authority may, under Mass.Gen.L. ch. 121B, § 9, contract for such housing beyond the borders of such city or town.

While it is within the power of the Court to address matters of state law, such an interpretation is best made by the judicial authority vested constitutionally with supreme authority to interpret the laws of Massachusetts. Therefore, pursuant to Supreme Judicial Court Rule 1:03 this Court certifies to the Supreme Judicial Court of Massachusetts the question whether a public housing authority is legally barred from contracting with landlords outside the political boundaries of the organizing city or town. The record accompanying this certification shall

---

**9.** The statute does not expressly give the authorities the right to operate Section 8 programs.

consist of the statement of agreed facts, the trial memoranda, and this opinion.

## C. CONSTITUTIONAL RIGHT TO TRAVEL

 In view of this Court's interpretation of state law, there is no occasion to consider the constitutional question whether the 1992 amendment to 42 U.S.C. § 1437f(r) infringes upon the right to travel. A court should address constitutional issues only when a case cannot be resolved on other grounds. *Burton v. United States,* 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482 (1905). This Court will confront the constitutional question if the decision of the Supreme Judicial Court on the issues presented makes such confrontation necessary and appropriate.

### III. CONCLUSION

The declaration initially made from the bench and further explicated herein resolves the issues among these parties. Since the interpretation of state law is central to this resolution, the matter is certified to the Supreme Judicial Court of Massachusetts for its authoritative opinion. This case shall be administratively closed pending the receipt of such opinion.

SO ORDERED.

### *CERTIFICATION*

For the reasons discussed, a question of Massachusetts law on which this Court is unable to find clear, controlling precedent in the decisions of the Supreme Judicial Court of Massachusetts may be determinative in this case. Accordingly, this Court certifies the following question to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03—

> Is a Massachusetts public housing authority legally barred from contracting with landlords outside the boundaries of the organizing city or town?

This Court has stated and discussed the facts relevant to the question certified in *Williams v. Hanover Housing Authority.* It welcomes, of course, the advice or comment of the Supreme Judicial Court on any other question of Massachusetts law it deems material to this case.

The Clerk will transmit this question and the opinion in this case, along with copies of the statement of agreed facts and the trial memoranda, to the Supreme Judicial Court of Massachusetts.