Tashima WILLIAMS, et al.,
Plaintiffs, Appellants,

v.

The HANOVER HOUSING AUTHORITY,
et al., Defendants, Appellees.

No. 96–1612.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1997.

Decided May 22, 1997.

Judith Liben, Boston, MA, with whom Ernest Winsor, Massachusetts Law Reform Institute, were on briefs for appellants.

Bernard M. Ortwein, Marblehead, MA, for appellees.

Before STAHL, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

At issue in this appeal is whether the plaintiffs in an action they brought under 42

U.S.C. § 1983[1] are entitled to recover attorneys' fees under 42 U.S.C. § 1988.[2] In the course of plaintiffs' § 1983 action, the district court determined an underlying state law issue in plaintiffs' favor. Because federal and state officials thereupon accepted the district court's interpretation—reversing a former interpretation challenged by plaintiffs—the § 1983 action became moot. The district court denied attorneys' fees, ruling that fees under § 1988 were improper as plaintiffs had vindicated no federal right. *Williams v. Hanover Housing Auth.*, 926 F.Supp. 10 (D.Mass.1996). *See also Williams v. Hanover Housing Auth.*, 871 F.Supp. 527 (D.Mass.1994). The court also declined fees as a matter of discretion. We conclude, notwithstanding plaintiffs failure to prevail on specifically federal grounds, that they are nonetheless prevailing parties under § 1988, and entitled to fees.

## I.

The disputed fees claim arises in the following circumstances. The plaintiffs-appellants were receiving federal housing subsidies under Section 8 of the United States Housing Act of 1937, as amended.[3] In April of 1993, they brought an action under 42 U.S.C. § 1983 against the Arlington and Danvers, Massachusetts, Public Housing Authorities (the "Authorities"), as well as against the Hanover, Massachusetts Public Housing Authority and the Secretary of the Department of Housing and Urban Development ("HUD").[4] Plaintiffs-appellants alleged that the Authorities, with HUD's approval, were illegally and unconstitutionally preventing them from using their Section 8 subsidies for housing outside the geographical limits of the city or town within which the Authority issuing the subsidy was located. The Authorities are quasi-public entities established under Massachusetts law to administer federal and state housing programs. Mass. Gen. Laws ch. 121B, § 1 *et seq.* (West 1986 & Supp.1996).

The Housing Act of 1937, which includes Section 8, sought to provide an adequate supply of housing for low income families by subsidizing their rent in the private market. 42 U.S.C. § 1437f(a) (West 1994). Section 8 allowed tenants wider geographical choice than did earlier programs, increasing opportunities to obtain dwellings in areas of less concentrated poverty. 42 U.S.C. § 1437f(r) (West 1994).[5] *See also* Cranston–Gonzalez National Affordable Housing Act, Pub.L. No. 101–625, § 551, 104 Stat. 4224 (1990); Housing and Community Development Act of 1987, Pub.L. No. 100–242, § 145, 101 Stat. 1852 (1988).

The Act leaves it up to the states, however, to determine the area within which a particular public housing authority may contract with landlords to furnish subsidized housing. HUD, the federal agency administering the Section 8 housing programs, provided in its

---

1. Section 1983 provides, in relevant part:

   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
   42 U.S.C. § 1983 (West 1994).

2. Section 1988 provides, in pertinent part:

   "In any action or proceeding to enforce a provision of section [] ... 1983 ..., the court, *in its discretion*, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs."
   42 U.S.C. § 1988(b) (West 1994) (emphasis added).

3. Plaintiffs'-appellants' subsidies were provided under the Section 8 Rental Certificate and Voucher Programs. 42 U.S.C. § 1437f(r). *See* 24 C.F.R. Parts 882, 887 (1995).

4. Appellants did not seek attorneys' fees against the Hanover Public Housing Authority, nor against the Secretary of HUD, and these defendants are not parties to this appeal.

5. Section 1437f(r) provides, in part:

   "(1) Any family assisted under subsection (b) or (o) of this section may receive such assistance to rent an eligible dwelling unit if the dwelling unit to which the family moves is within the same State, or the same or a contiguous metropolitan statistical area as the metropolitan statistical area within which is located the area of jurisdiction of the public housing agency approving such assistance...." 42 U.S.C. § 1437f(r)(1) (West 1994).

regulations that the local public housing authorities will determine their own jurisdictional reach by reference to state law. *See* 24 C.F.R. § 882.103(a) (1995).

In 1977, HUD was presented with conflicting legal opinions from two different Massachusetts public housing authorities as to whether they could legally contract with private landlords outside their municipal boundaries.[6] HUD asked the Massachusetts Executive Office of Communities and Development ("EOCD"), the state agency that supervises local public housing authorities, to seek a legal opinion from the Massachusetts Attorney General. Instead, the EOCD provided its own legal opinion, which was that a Massachusetts public housing authority *could not* contract with private landlords outside its municipal boundaries, except by agreement with another local public housing authority. HUD and the Authorities accepted and followed the EOCD's opinion on this matter. The extent of a local authority's "jurisdiction" to provide subsidized housing took on added significance in 1992 when Congress amended the portability rules of the Section 8 housing programs. Plaintiffs say that the amendment forced them and others like them to seek rental units within the jurisdiction of a single authority.[7] Unless that authority could provide housing beyond its municipal limits, tenants like plaintiffs were curtailed in their mobility and choice of housing. Faced with this situation, plaintiffs sued in the district court under § 1983 in April of 1993, seeking a judicial determination of their right to use their Section 8 housing subsidies in any community within the Commonwealth. To expedite a decision, the parties agreed that the facts would be submitted as a case stated. *See Continental Grain Co. v. Puerto Rico Mari-*

*time Shipping Auth.,* 972 F.2d 426, 429 n. 7 (1st Cir.1992).

In contending that it was unlawful for HUD and the Authorities to restrict their Section 8 housing subsidies to the city or town in which the issuing Authority was located, the tenants alleged that the geographical restrictions violated 42 U.S.C. § 1437f(r)(1), the relevant HUD regulations, Title VIII of the Civil Rights Act of 1968, and 42 U.S.C. § 1983. They also alleged that the restrictions interfered with their constitutional right to travel under the Fifth and Fourteenth Amendments to the United States Constitution.

Fearing the loss of their Section 8 subsidies if they could not immediately find housing within the municipal boundaries of the Authority that issued their respective Section 8 certificates, the plaintiffs moved for a preliminary injunction that would toll or freeze the subsidies' expiration dates. The need for preliminary relief ceased, however, when defendants agreed not to terminate the plaintiffs' subsidies while the case was pending.

After reviewing submissions and hearing arguments, the district court issued an oral opinion on September 9, 1993, followed by a written decision on December 12, 1994. *See Williams,* 871 F.Supp. at 527–35. The district court stated in both that, in its view, Massachusetts law permitted state public housing authorities to contract with landlords owning dwellings outside their municipal boundaries.

Less than a month after the district court's oral opinion, HUD issued a directive to the Massachusetts public housing authorities informing them that all Section 8 tenants could henceforth use their housing subsidies anywhere in the Commonwealth. HUD, as the district court later declared, *Williams,* 926

---

**6.** The Cambridge Housing Authority, like the plaintiffs in this case, took the position that state law does not bar local public housing authorities from contracting anywhere in the Commonwealth, while the Arlington Housing Authority, similar to the defendants in this litigation, took a much narrower view of Section 8 "jurisdiction."

**7.** Section 147 of the Housing and Community Development Act of 1992 amended the portability provisions of 42 U.S.C. § 1437f by providing that:

"any family not living within the jurisdiction of a public housing agency at the time that such family applies for assistance from such agency shall, during the 12–month period beginning upon the receipt of any tenant-based rental assistance made available on behalf of the family, use such assistance to rent an eligible dwelling unit located within the jurisdiction served by such public housing agency." Housing and Community Development Act § 147, 42 U.S.C. § 1437f(r)(1) (West 1994).

F.Supp. at 12, treated the district court's ruling as an authoritative declaration of state law, superseding the contrary opinion of the EOCD. The Authorities also went along.

While the district court rendered its own opinion as to an authority's jurisdiction, it also certified the same question to the Massachusetts Supreme Judicial Court.[8] Before that court reached the matter, the district court withdrew its certification, in part because of certain changes in HUD's regulations. At a November 30, 1995 hearing in the district court to determine the status of the case, HUD assured the district court that, in spite of its changed regulations,[9] it would continue to instruct all Massachusetts public housing authorities to abide by the court's oral and written decisions issued in plaintiffs' § 1983 case. The district court thereupon dismissed the § 1983 action as moot and plaintiffs petitioned, unsuccessfully, for their attorneys' fees.

## II.

In its opinion denying to plaintiffs attorneys' fees under 42 U.S.C. § 1988, the district court stated that, to receive fees, the plaintiffs had to be prevailing parties in their § 1983 action. In that action, the court continued, plaintiffs claimed to have been deprived of "rights secured by federal statutes, regulations and the United States Constitution." *Williams,* 926 F.Supp. at 13. In the court's view, plaintiffs never became entitled to fees because the court never found that they "had a right under federal law to have the Authorities contract outside of their political boundaries for Section 8 housing." *Id.* Rather the import of the court's ruling was that state, not federal law allowed the Authorities to contract outside of their political boundaries. *Id.* As plaintiffs did not vindicate a federal right, the district court believed that § 1988 provided no right to fees.

The court also stated, as a separate ground for decision, that it would refrain from awarding attorneys' fees as a matter of discretion, even assuming plaintiffs could be said to have prevailed on a federal right.

## III.

■ In reviewing the district court's denial of fees, we turn first to its ruling that, because plaintiffs did not prevail on any of their federal claims, they are barred from receiving attorneys' fees under § 1988. We review this ruling *de novo* as it presents essentially a question of law, not the individualized considerations which lead us to apply a deferential review standard. *See Domegan v. Ponte,* 972 F.2d 401, 406 n. 8 (1st Cir. 1992).

■ We think the district court's analysis is unsupported by Supreme Court precedent and that of this and other circuits. The clear tendency of the courts has been to apply the fees statute in a more practical and less restrictive way.

Section 1988 itself nowhere states that attorneys' fees can be awarded only to those who prevail on expressly federal grounds. To be sure, the statute specifies that fees are to be awarded only "in" any of the enumerated federal causes of action, including § 1983. Note 2, *supra.* And fees can be allowed only to a prevailing party. But the attorneys' fees being requested here are for services in an action to enforce a provision of § 1983 and (as further discussed below) plaintiffs have, in every practical sense, prevailed—having, as a result of their lawsuit, achieved precisely the end-relief they wanted, namely the right to use their Section 8 housing subsidies outside the political boundaries of the Authority providing the subsidy.

To uphold the district court's rationale, we would have to read into § 1988 an implied further requirement that, to be a prevailing party, it is necessary not only to have secured a significant objective of one's federal lawsuit, but to have done so by obtaining a favorable ruling on some federal legal or constitutional claim advanced in the suit. A

---

**8.** The district court certified the following question:

"Is a Massachusetts Public Housing Authority legally barred from contracting with landlords outside the boundaries of the organizing city or town?"

**9.** *Compare* 24 C.F.R. § 882.103(a) (1995) *with* 60 Fed.Reg. 34660, 34697 (1995).

theory akin to this was rejected seventeen years ago in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the Supreme Court saying,

> "The fact that respondent prevailed through settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiffs' rights have been violated. Moreover, the Senate Report expressly stated that 'for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without obtaining relief. . . .'"

*Maher*, 448 U.S. at 129, 100 S.Ct. at 2574–75 (citation omitted).

*Maher*, it is true, did not deal with precisely the present situation, where the winning party has prevailed through the federal court's favorable interpretation of an issue of state law. But decisions in this and other circuits have dealt with outcomes like the present. These decisions indicate that it is immaterial for § 1988 purposes that plaintiffs' success in the § 1983 action results from a favorable ruling on a relevant issue of state law, so long as the state law issue and the federal claims being made in the § 1983 proceeding are closely interrelated.

Judge (now Justice) Breyer writing for this court in *Aubin v. Fudala*, 782 F.2d 287, 291 (1st Cir.1986) (citation omitted), said that "'victory' in a civil rights suit is typically a practical rather than a strictly legal matter." The court went on to endorse the Aubins' right to fees if they received "the basic relief they sought (but on the state claim) and if, in fact, the state and federal claims are factually and legally interconnected." *Id.* In *Aubin, id.*, we quoted the statement in 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2675 at 306 (2d ed.1983), that § 1988 "has been applied to allow fees for the successful prosecution of pendant state law claims when the federal claims, though presenting substantial federal issues, never were reached by the district court." *See, e.g., Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.

1981) (reasonable fee should not be denied simply because the jury awarded substantial damages only in the pendant state law claim).

Virtually identical to the present was the situation in our case of *Exeter–West Greenwich Regional School v. Pontarelli*, 788 F.2d 47 (1st Cir.1986). We said there that attorneys' fees were recoverable in a § 1983 action where plaintiffs prevailed on a state law issue arising from the same nucleus of common facts as the federal claims, provided the latter were substantial enough to support federal jurisdiction. *Id.* at 51–53. There, the § 1983 action—alleging that a state education commissioner's interpretation and application of a state law violated the federal constitution—became moot when the Rhode Island Supreme Court, on certification from the federal court, ruled that the commissioner had interpreted the state law incorrectly. As here, the favorable interpretation of state law came as a consequence of the § 1983 litigation, the federal court, as part of that proceeding, having certified the determinative state law question to the state court, which overturned the commissioner's interpretation. Also as here, the federal claims in the lawsuit were mooted by the state law ruling and were never decided.

In the present case, as in *Exeter–West Greenwich*, the unfavorable interpretation of state law that led plaintiffs to bring the § 1983 action was also certified to the highest state court. However, the certification was withdrawn and federal and state authorities agreed to continue to abide by the district judge's own determination of state law—a determination that had reversed the EOCD's construction challenged in the § 1983 lawsuit. Following *Exeter–West Greenwich*, therefore, we see no legal impediment to allowing plaintiffs their attorneys' fees under § 1988 even though their victory rests on a state, not a federal ground. *See also Paris v. U.S. Dept. of Housing & Urban Dev.*, 988 F.2d 236, 239–40 n. 7 (1st Cir.1993) (quoting legislative history of "almost identical" bill to that which produced § 1988, supporting recovery of fees if the claim for which fees may be awarded meets the "substantiality" test in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577

(1974), even though court declines to enter judgment on that claim, so long as plaintiff prevails on non-fee claim arising out of a common nucleus of operative fact).

It is, of course, important to our decision that the dispositive state law question was closely interconnected with the federal claims. Here, as in *Exeter–West Greenwich,* the federal statutory and constitutional claims made in the § 1983 action were directed at overthrowing an unfavorable state law ruling. Whether that ruling was itself correct was a legitimate question for consideration in the § 1983 suit: if, as the district court determined, the EOCD's interpretation was incorrect, there was no need to resolve the federal constitutional claim raised by plaintiffs, a fact noted by the district judge himself as a reason for certification. *Williams,* 926 F.Supp. at 12.[10] By addressing the state law question first, the federal court followed the principle that a case should not be decided on constitutional grounds if other grounds are available. The certification process enabled the federal court to seek an authoritative interpretation of state law from the state's highest court; but this proved unnecessary as the district court's own announced view of the state law persuaded HUD and the Authorities to abandon, without more, their previous construction, and to embrace the one plaintiffs wanted. The state law question on which the court ruled was thus closely entwined with the federal claims, the court's addressing of it being an appropriate judicial action taken within the context of the § 1983 proceeding itself. Being integral to the latter and to the federal claims therein, it furnished an unexceptionable basis for finding plaintiffs to be "prevailing parties" entitled to fees under § 1988. We, therefore, reject the district court's reasoning that plaintiffs are not entitled to attorneys' fees because their success did not derive from the vindication of any specifically federal right.[11]

We add that it is well-settled in this circuit that a § 1983 plaintiff seeking attorneys' fees under § 1988 may establish "prevailing party" status under a "catalyst" as well as a "merits" analysis. *See, e.g., Paris,* 988 F.2d at 241. Plaintiffs argue that they win under either approach. Because the "catalyst" formulation is so plainly dispositive we need not determine whether plaintiffs sufficiently prevailed on the merits of their claims to be entitled to fees under a "merits" analysis also. Their action under § 1983 was at least a "catalyst," which resulted in their achieving precisely the result they sought by bringing the action.

▪ In order to qualify for "prevailing party" status under a catalyst theory, plaintiffs must show "(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously." *Guglietti v. Secretary of Health & Human Servs.,* 900 F.2d 397, 401 (1st Cir. 1990) (citing to *Nadeau v. Helgemoe,* 581 F.2d 275, 280–81 (1st Cir.1978)). *See also Paris,* 988 F.2d at 241.[12] The lawsuit need not be the sole cause of the fee-target's remedial actions, but it must be a "competent producing cause of those actions," or play a "provocative role in the calculus of relief."

---

10. In the 1994 opinion, the district court stated: "In view of this Court's interpretation of state law, there is no occasion to consider the constitutional question whether the 1992 amendment to 42 U.S.C. § 1437f(r) infringes upon the right to travel. A court should address constitutional issues only when a case cannot be resolved on other grounds. *Burton v. United States,* 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482 (1905). This Court will confront the constitutional question if the decision of the Supreme Judicial Court on the issues presented makes such confrontation necessary and appropriate." *Williams,* 871 F.Supp. at 535.

11. No question has been raised as to the jurisdictional sufficiency of the plaintiffs' § 1983 action.

It is not suggested that the federal issues alleged in the § 1983 action were so wholly unsubstantial or frivolous as to render that action a jurisdictional nullity. *See Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974); *Exeter–West Greenwich,* 788 F.2d at 53.

12. Other panels have worded the two-prong test differently, holding that, to be a catalyst, the lawsuit (1) must be a "necessary and important factor" in achieving an end result favorable to the plaintiffs, and (2) must not be "frivolous, unreasonable, or groundless." *See Exeter–West Greenwich,* 788 F.2d at 52; *Coalition For Basic Human Needs v. King,* 691 F.2d 597, 599 (1st Cir.1982).

*Guglietti,* 900 F.2d at 401. *See also Paris,* 988 F.2d at 241.

Here there is an undoubted causal connection between the § 1983 lawsuit and the favorable change in Section 8 portability policy. The district court conceded that plaintiffs' suit "had some salutary effect." *Williams,* 926 F.Supp. at 14. More significantly, it found that HUD had accepted the court's ruling "as an authoritative declaration of state law," *id.* at 12, leading HUD and the Authorities to abandon the EOCD's ruling that had led plaintiffs to seek § 1983 relief. The end result cannot, therefore, be thought to have come about independently of the underlying litigation, nor can it be said to be unclear that the lawsuit was significantly responsible for the relief obtained by the plaintiffs. *Compare Paris,* 988 F.2d at 241 ("Congress specifically mentioned the case in the legislative history [of the amendment] as being the 'necessary' force behind its enactment.") *with Guglietti,* 900 F.2d at 402 ("[I]t seems naive in a run-of-the-mine case like this one to credit the change in the law to the [plaintiff's] appeal.").

Before this action was filed, both HUD and the Authorities had taken a firm position towards the plaintiffs' plight: for the first twelve months of the Section 8 tenancy, the plaintiffs were only entitled to housing located within the municipal boundaries of the public housing Authority issuing their Section 8 certificates. It was only in the wake of the district court's announced decision to the contrary that HUD reversed this policy by notifying all Massachusetts public housing authorities that their "jurisdiction," for purposes of Section 8, extended to any community within the Commonwealth, and by granting the plaintiffs full portability rights under § 1437f(r)(1). There is no suggestion that without the filing of the underlying action, and the proceedings spawned by it, this change in Section 8 portability policy would have occurred. Plaintiffs' lawsuit was not only a "necessary and important factor" in achieving the desired result, it seems to have been the key factor.

While acknowledging that the plaintiffs got what they wanted in their lawsuit, the Authorities attribute this "practical" success to HUD's "voluntary" agreement to change its Section 8 portability policy, a "gratuitous gesture" by the fee-target. But for reasons already stated, there is no reasonable way that HUD's and the defendant Authorities' change of heart can be disassociated from the lawsuit. We accept that HUD and the Authorities were cooperative once the court had expressed its interpretation of state law. They might have continued to fight. One may applaud their good sense and good will. Still, a ruling even as to state law by an experienced district judge is a significant matter, as these events showed, and the court's ruling was backed by the pending certification to the highest state court. HUD and the Authorities would hardly have accepted the ruling had they doubted its correctness. The filing of this case triggered a process before the district court (i.e. the submission of papers, the holding of hearings, the presentation of arguments, etc.) that led to the district court's decision. It was in response to that decision that HUD, and the Authorities, changed their Section 8 portability policy in Massachusetts. Plaintiffs are thus prevailing parties as that term is used in 42 U.S.C. § 1988.

## IV.

Having found that the plaintiffs are "prevailing parties" for purposes of § 1988, we now turn to the second issue presented for review, to wit, whether there were "special circumstances" in this case meriting the district court's denial of attorneys' fees on discretionary grounds. While § 1988 provides that attorneys' fees may be granted to the prevailing party in the district court's discretion, both the legislative history and case law since enactment of § 1988 indicate that prevailing parties may not ordinarily be denied fees except in special circumstances making the award unjust. The district court's "broad discretion" to award fees to "prevailing parties" under § 1988, *see Sargeant v. Sharp,* 579 F.2d 645, 647 (1st Cir. 1978), must be guided by the statutory presumption that fees should be awarded to successful plaintiffs absent unusual situations. *See generally* S.Rep. No. 94–1011 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908.

A prevailing plaintiff, the Supreme Court has said, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citation omitted) (footnote omitted); *Newman v. Piggie Park Enters. Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). *See also David v. Travisono,* 621 F.2d 464, 468 (1st Cir.1980) (citations omitted); *Sargeant,* 579 F.2d at 647 (citations omitted). With this in mind, we review for abuse of discretion the district court's discretionary determination, asking whether the court identified appropriate "special circumstances" that justify the denial of fees.

In this circuit, "special circumstances" warranting a denial of attorneys' fees under § 1988 have been found if there is a showing of "outrageous" or "inexcusable" conduct by plaintiffs (or plaintiffs' counsel) during the litigation of the case. *Lewis v. Kendrick,* 944 F.2d 949, 956 (1st Cir.1991). In *Lewis,* this court reversed an award of attorneys' fees noting that the plaintiff had "failed entirely, or largely, in everything" and that her lawyers' subsequent failure to adjust their billing accordingly was, thus, "inexcusable." *Id.* at 955–56. In a case where a fee award was affirmed, but its amount reduced, this court reiterated that, under *Lewis,* "special circumstances" exist where the fee application reflects "(1) no 'good faith' effort to exclude excessive, redundant, or otherwise unnecessary hours, (2) no reduction for time spent on unsuccessful claims, and (3) no allowance for the limited 'degree of success' achieved by the plaintiff." *Domegan,* 972 F.2d at 419 (citing to *Lewis,* 944 F.2d at 957–58). In the instant case, there is no indication from the record below that any of the parties (or their lawyers) engaged in "outrageous" or "inexcusable" conduct of this nature, nor does the court suggest as much. *Compare Lewis,* 944 F.2d at 955–56, *with, e.g., Domegan,* 972 F.2d at 419–20.

The district court seems rather to have employed a "balancing of the equities" test not accepted in this circuit, *see Stefan v. Laurenitis,* 889 F.2d 363, 370–71 (1st Cir. 1989), in finding "special circumstances" in the instant case. The district court first found that the defendants in this case had acted in good faith.[13] The district court went on to acknowledge that "good faith alone on the part of the Authorities is insufficient to deny the Williams Plaintiffs attorneys' fees ...", *Williams,* 926 F.Supp. at 14 (citation omitted), the rule in this and apparently every other circuit that has considered the issue. Indeed, in the First Circuit,

> "[T]he good faith of defendants is not a controlling factor in determining whether or not plaintiffs merit an award ... This conforms to the policy underlying the award of attorney's fees in civil rights cases ... [I]t makes no difference whether plaintiff's suit yields favorable out of court results because a good faith defendant is brought to understand the illegality of his conduct and alters his behavior or because an unrepentant defendant grudgingly signs a consent decree to avoid continued litigation expenses in a lost cause. *The key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant.*"

*Nadeau,* 581 F.2d at 280 (citations omitted) (emphasis added). *See also Burke v. Guiney,* 700 F.2d 767, 772 (1st Cir.1983) (" 'Good faith by itself is not a special circumstance justifying a denial of attorney's fees.' ") (quoting *Teitelbaum v. Sorenson,* 648 F.2d 1248, 1250 (9th Cir.1981)).

Although the defendants' good faith, in and of itself, was not enough to justify the denial of attorneys' fees, the district court found "something more" in this case, *Williams,* 926 F.Supp. at 14, to wit, the defendants' good faith reliance on the EOCD's interpretation of Massachusetts law.[14] The circuits are in

**13.** The district court stated:

"In interpreting their jurisdiction as prohibiting their contracting for housing outside of their town boundaries, the Authorities acted in good faith and appear to have made significant efforts to assist the Williams Plaintiffs in securing housing consistent with their interpretation of the

restriction on their jurisdiction." *Williams,* 926 F.Supp. at 13–14.

**14.** The Authorities suggest that the district court also took into account what they regard as the plaintiffs' limited success in the underlying litigation in denying an award of attorneys' fees under

agreement, however, that defendants' good faith reliance even on settled law (which was scarcely the case here) is not a "special circumstance" warranting a denial of attorneys' fees under § 1988. In *Coalition For Basic Human Needs v. King*, 691 F.2d 597, 602 (1st Cir.1982), where appellees claimed that "state law required them—under threat of criminal penalties—to deny" plaintiffs the Aid to Families with Dependent Children ("AFDC") payments they sought, this court said:

> "If the appellees mean this fact to show that they acted in good faith—that they felt obliged to withhold the funds and obliged to contest the Coalition's suit—we agree that they may have had good-faith reasons for their acts, but that is no reason to deny the Coalition attorney's fees. The Civil Rights Attorney's Fees Awards Act is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith. Rather, it is meant to compensate civil rights attorneys who bring civil rights cases and win them. The need for such law suits, and such payment, may well be greatest in just those instances in which lawyers and officials, in totally good faith, have opposing views about what state and federal law requires of them."

The underlying theme in all of these "good faith" cases, then, is that the analysis under § 1988 must focus, not on the defendants' conduct, but on the harm suffered by the plaintiffs and the relief obtained through their lawsuit. Having done so, we are unable to find that any of the circumstances identified by the district court meet the criteria for "special circumstances" adequate to deny fees under the law as it has developed. We hold, therefore, that the district court exceeded its discretion in denying any fees on the discretionary basis set forth in its opinion.

### V.

For all of the foregoing reasons, we vacate the district court's order denying the plaintiffs' motion for attorneys' fees under § 1988. We remand the case to the district court for consideration of the fee application in a manner not inconsistent with this opinion.

*It is so ordered. Costs for appellant.*

---

§ 1988. It is true that, towards the end of its opinion, the district court notes:

"[I]n this case a balancing of the equities weighs against the award of attorney's fees. This is particularly so given the relatively arcane point of state law upon which the Williams Plaintiffs prevailed." *Williams*, 926 F.Supp. at 14.

Whether the district court meant to identify another "special circumstance" we need not decide here, as it is well-established that ordinarily "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989). We add that where, as here, the goal of the § 1983 action was to alter the earlier state law ruling, and where that occurred, we have difficulty understanding how plaintiffs' success can be termed partial.